Merilyn COOK, William Jr. and Delores Schierkolk, Richard and Sally Bartlett and Lorren and Gertrude Babb, Bank Western, a federal savings bank, a federally chartered savings bank, and Field Savings Corporation, a Colorado corporation, on their own behalf and as representatives of a class of persons and entities suffering economic harm; and Michael Dean Rice, Thomas L. and Rhonda J. Deimer, and Stephen M. and Peggy J. Sandoval, on their own behalf and as representative of a class of similarly situated residents and workers, Plaintiffs,

v.

ROCKWELL INTERNATIONAL CORPORATION, a Delaware corporation, and The Dow Chemical Company, a Delaware corporation, Defendants.

Civ. A. No. 90–B–181.

United States District Court,
D. Colorado.

Feb. 13, 1991.

Bruce H. DeBoskey, Steven W. Kelly, Silver & DeBoskey, P.C., Denver, Colo., Ronald Simon, David Elbaor, Richard J. Fiesta, Connerton, Ray and Simon, Washington, D.C., Merrill Davidoff, Berger & Montague, P.C., Philadelphia, Pa., Robert Golten, Fredericks & Pelcyger, Boulder, Colo., Stanley M. Chesley, Waite, Schneider, Bayless & Chesley Co., L.P.A., Cincinnati, Ohio, for plaintiffs.

Joseph J. Bronesky, Christopher Lane, Sherman & Howard, Denver, Colo., John D. Aldock, James R. Bird, Michael S. Giannotto, Shea & Gardner, Washington, D.C., for Rockwell Intern. Corp.

Mark S. Lillie, John A. DeSisto, Kirkland & Ellis, Denver, Colo., David M. Bernick, Kevin T. Van Wart, Kirkland & Ellis, Chicago, Ill., for Dow Chemical Corp.

## MEMORANDUM OPINION AND ORDER

BABCOCK, District Judge.

Plaintiffs are individuals and businesses who own land near the Rocky Flats Nuclear Weapons Plant (Rocky Flats). They sue on their own behalf and as representatives of a class of others similarly situated. No class certification has issued.

Rocky Flats is owned by the United States and operates under the jurisdiction of the U.S. Department of Energy (DOE). Under a series of management contracts with the Atomic Energy Commission and later with the DOE, defendant Dow Chemical Company (Dow) operated the plant from 1951 through June 1975. Defendant Rockwell International Corporation (Rockwell) similarly operated the plant from July 1975 until December 31, 1989. Plaintiffs allege that they have incurred injury and damages caused by releases or threatened releases of hazardous substances from Rocky Flats.

There are three types of causes of action alleged. First, plaintiffs seek to recover "response costs" under section 107 of the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA), 42 U.S.C. § 9607. Second, plaintiffs seek damages under the Price Anderson Act, 42 U.S.C. §§ 2211-2284. Third, they seek damages under Colorado common law based on diversity jurisdiction.

Price Anderson borrows the substantive law of the state in which an alleged nuclear incident took place, which here is Colorado. *See* 42 U.S.C. § 2014(hh). Accordingly, the claims under Price Anderson and under Colorado common law are identical: negligence; strict liability; private nuisance; trespass; misrepresentation and concealment; outrageous conduct; and punitive damages.

## I. SUMMARY OF RULINGS

Before me are numerous motions to dismiss or for summary judgment filed by Dow and Rockwell and various motions by plaintiffs to amend. I hold that: (1) the portion of plaintiffs' CERCLA claim that seeks costs incurred after judgment in this case fails to state a claim upon which relief may be granted; (2) the portion of plaintiffs' CERCLA claim that seeks to recover the prejudgment costs of medical testing to monitor the health effects of defendants' alleged releases of hazardous substances fails to state a claim upon which relief may be granted; however, the portion of plaintiffs' CERCLA claim that seeks to recover the prejudgment costs of medical testing necessary to monitor the environmental effects of defendants' alleged releases is cognizable; (3) plaintiffs' CERCLA claim is deficient for failure to plead at least one cognizable response cost incurred before this action was filed by each named plaintiff who is asserting a CERCLA claim, but they should be granted leave to amend; (4) plaintiffs' Price Anderson and Colorado common law claim for individualized medical monitoring is cognizable but deficient for failure to adequately plead exposure to a hazardous substance; plaintiffs should be granted leave to amend; (5) plaintiffs' Price Anderson and Colorado common law claim for general scientific studies is not cognizable and fails to state a claim upon which relief may be granted; (6) plaintiffs' claim for outrageous conduct is cognizable but deficient for failure to plead adequately the elements of severe emotional distress and requisite intent; plaintiffs should be granted leave to amend; (7) plaintiffs' claim for misrepresentation and concealment is fatally defective because they can prove no set of facts that would entitle them to relief and any effort to amend would be futile; (8) genuine questions of material fact exist whether plaintiffs may be entitled to punitive damages arising out of nuclear incidents occurring before August 20, 1988 and I cannot say that plaintiffs are entitled to judgment as a matter of law as to these incidents; (9) as to nuclear incidents occurring on or after August 20, 1988, no genuine issues of material fact remain for resolution and defendants are entitled to judgment on plaintiffs' claim for punitive damages as a matter of law; (10) genuine issues of material fact remain whether plaintiffs' actions against Dow are barred by the applicable statute of limitations; (11) injunctive relief to prevent Rockwell's "further releases of plutonium

and radioactive and non-radioactive substances for Rocky Flats" would be ineffectual, and thus, Rockwell's motion to dismiss this claim should be granted; (12) defendants' motions for summary judgment on plaintiffs' claims for a fund to finance future scientific studies are made moot by my dismissal of these claims.

## II. LEGAL STANDARD

For the purposes of a motion to dismiss, I accept all factual allegations as true and resolve all reasonable inferences in favor of the plaintiff. *Tri-Crown, Inc. v. American Federal Sav. & Loan, Ass'n*, 908 F.2d 578, 582 (10th Cir.1990). "A case should not be dismissed for failure to state a claim unless the court determines beyond doubt that the plaintiff can prove no set of facts which entitle him to relief." *Id.*

In deciding a motion for summary judgment the evidence and any possible inferences are viewed in the light most favorable to the party opposing summary judgment. *Merrick v. Northern Natural Gas Co.*, 911 F.2d 426, 429 (10th Cir.1990). Summary judgment is appropriate if there is no genuine issue of material fact and the movant is entitle to judgment as a matter of law. Fed.R.Civ.P. 56(c). A genuine issue exists if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

## III. DISCUSSION

### A. *CERCLA*

Plaintiffs allege that defendants violated section 107(a) of CERCLA, 42 U.S.C. § 9607(a). CERCLA was designed to facilitate cleanup of environmental contamination caused by releases of hazardous substances. *Colorado v. Idarado Mining Co.*, 916 F.2d 1486, 1488 (10th Cir.1990). To promote this aim, Congress created a private cause of action where certain "response costs" could be recovered against those who contributed to dumping hazardous waste at a site. 42 U.S.C. § 9607(a); *Idarado*, 916 F.2d at 1488.

To state a claim under section 9607(a), a plaintiff must allege that: (1) the waste disposal site is a "facility" as defined by 42 U.S.C. § 9601(9); (2) a "release" or "threatened release" of any "hazardous substance" has occurred, § 9607(a)(4); and (3) such "release" or "threatened release" has caused the plaintiff to incur response costs that are consistent with the national contingency plan, §§ 9607(a)(4) & (a)(4)(B). *See Ascon Properties, Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1152 (9th Cir.1989). In addition, the defendant must fall within one of the classes of persons subject to CERCLA's liability provision. § 9607(a)(1)-(4).

In this case, plaintiffs have sued past operators of a facility under section 9607(a)(1). Plaintiffs seek "response costs incurred by [plaintiffs] pursuant to CERCLA, including the creation of a fund to finance independent scientific studies of exposure to hazardous substances...." Amended Complaint, Prayer For Relief ¶ d.

Defendants argue that the CERCLA claim should be dismissed in whole or in part because: (1) the costs of post-judgment studies are not recoverable under CERCLA; (2) medical monitoring costs are not available under CERCLA; and (3) plaintiffs have failed to plead a cognizable response cost incurred prior to filing this suit.

I hold that the costs of post-judgment studies are not available under CERCLA and grant defendants' motions to dismiss the portion of the complaint that seeks such relief. I also grant defendants' motions to dismiss the portion of plaintiffs' CERCLA claim that seeks to recover the costs of medical testing to monitor the health effects of defendants' releases. However, I deny defendants' motions concerning the portion of plaintiffs' CERCLA claim that seeks to recover the costs of medical testing necessary to monitor the environmental effects of defendants' releases. Finally, I conclude that plaintiffs' CERCLA claim is deficient for failure to plead at least one cognizable response cost incurred before this action was filed by each named plaintiff who is asserting a

CERCLA claim, but they should be granted leave to amend.

■■■ Defendants argue that the CERCLA claim should be dismissed because post-judgment costs are not recoverable under CERCLA. As plaintiffs acknowledge, CERCLA allows recovery only of costs that have been incurred by a plaintiff before judgment. *E.g., Williams v. Allied Automotive Autolite Div.*, 704 F.Supp. 782, 784 (N.D.Ohio 1988). Here, it is unclear whether plaintiffs are seeking money to finance post-judgment studies. However, to the extent that they are, defendants' motions are well taken. In so far as the complaint seeks response costs incurred prior to judgment, defendants' motions to dismiss will be denied.

Defendants also seek to dismiss the portion of the complaint that seeks medical monitoring costs under CERCLA. Plaintiffs' request for relief under CERCLA does not specifically seek medical monitoring. However, as plaintiffs acknowledge, the studies they envision entail "the study of bioaccumulation of hazardous substances in human[s] and ... epidemiological studies." Plaintiffs' Brief at 49.

Section 9607(a)(4) allows recovery for "[a]ny other necessary costs of response incurred by any other person consistent with the national contingency plan." The "national contingency plan" is a set of regulations governing CERCLA response cost action. *See* 40 C.F.R. Part 300. The phrase "necessary costs of response" is not defined. However, "response" is defined as "remove, removal, remedy and remedial action." 42 U.S.C. § 9601(25). "Remove" means the

> clean up or removal of released hazardous substances from the environment, ... such actions as may be necessary to monitor, assess, and evaluate the release or threat of release of hazardous substances, ... or the taking of such other actions as may be necessary to prevent, minimize, or mitigate damage to the public health or welfare or to the environment, which may otherwise result from a release or a threat of release.

42 U.S.C. § 9601(23). Subsection 23 lists security fencing, provision of alternative

water supplies, and temporary evacuation and housing as specific examples.

"Remedy" or "remedial action" means "those actions consistent with permanent remedy taken instead of or in addition to removal actions ... to prevent or minimize the release of hazardous substances so that they do not migrate to cause substantial danger to present or future public health or welfare or the environment." 42 U.S.C. § 9601(24). Specific examples include containment or diversion actions, treatment or incineration, provision for alternative water supplies, "and any monitoring reasonably required to assure that such actions protect the public health and welfare and the environment." *Id.*

■■■ Courts are divided on whether a claim for costs of medical monitoring are cognizable under section 107 of CERCLA. *Compare e.g., Brewer v. Ravan*, 680 F.Supp. 1176 (M.D.Tenn.1988) (medical monitoring cognizable); *Williams*, 704 F.Supp. 782 (same) *with Ambrogi v. Gould, Inc.*, 750 F.Supp. 1233 (M.D.Pa. 1990) (medical monitoring not cognizable); *Werlein v. United States*, 746 F.Supp. 887 (D.Minn.1990) (same); *Coburn v. Sun Chemical Corp.*, 28 Env't.Rep.Cas. (BNA) 1668 (E.D.Pa.1988) (same).

In *Brewer*, the court denied a motion to dismiss a claim for medical testing under CERCLA, stating:

> CERCLA's legislative history clearly indicates that medical expenses incurred *in the treatment of personal injuries or disease* caused by an unlawful release or discharge of hazardous substances are not recoverable under section 9607(a).... To the extent that plaintiffs seek to recover the cost of medical testing and screening conducted *to assess the effect of the release or discharge on public health problems presented by the release,* however, they present a cognizable claim under section 9607(a).

*Brewer*, 680 F.Supp. at 1176 (emphasis in original). The court reasoned that "[p]ublic health related medical tests and screening clearly are necessary to 'monitor, assess, [or] evaluate a release' and therefore

constitute 'removal' under section 9601(23). *Id.*

*Coburn* rejected this rational in striking plaintiffs' request for medical monitoring costs under CERCLA. First, the court stated that CERCLA's definitions of "response" and "remedy and remedial action" contain no "references whatsoever to medical expenses of any kind nor do they give any inferences that such expenses are recoverable...." 28 Env't Rep.Cas. at 1670. The court then noted that CERCLA does contain health assessment or health effects study provisions, *see* § 9604(i), but that these provisions are applied and administered apart from the liability provisions of section 107. 28 Env't Rep.Cas. at 1670. Next, the court examined CERCLA's legislative history. It pointed out that the original Senate Superfund Bill contemplated including medical monitoring under CERCLA. The court quoted Senator Randolf commenting on the bill which became CERCLA: "[w]e have deleted the federal cause of action for medical expenses or property or income loss." *Id.* (quoting 126 Cong.Rec. S314964 (daily ed. Nov. 24, 1980)). Finally, the court expressly refused to follow *Brewer*'s holding that medical testing may constitute a "response" cost. "Quite simply, we find it difficult to understand how future medical testing and monitoring of persons who were exposed to contaminated well water prior to the remedial measures currently underway will do anything to 'monitor, assess, [or] evaluate a release' of contamination from the site." *Id.* at 1671.

The recent decision of *Ambrogi* followed *Coburn,* while emphasizing two points not stressed in the *Coburn* analysis. First, *Ambrogi* noted that the 1986 SARA amendments to CERCLA allow individuals or physicians to petition the Agency for Toxic Substances and Disease Registry (ATSDR) for a health assessment of a given site. *See Ambrogi,* 750 F.Supp. at 1249 (citing 42 U.S.C. § 9604(i)(6)(B)). The court reasoned that CERCLA thus contemplated health studies and that the sole avenue for receiving such studies was through the ATSDR. *Ambrogi* also noted that because most states now allow tort claims for medical monitoring, CERCLA does not allow such a claim because "Congress surely did not intend to create an overlap between traditional state tort claims and a 'new' CERCLA federal toxic tort action." *Id.* at 1250.

The *Coburn* line of cases is persuasive authority that the costs of medical testing to monitor the *health* effects of a release or threatened release are not recoverable under section 9607(a). However, I conclude that the costs of medical testing necessary to monitor the *environmental* effects of a release or threatened release fall within the definition of "remove."

CERCLA was designed to facilitate the cleanup of toxic substances from the environment. *Idarado,* 916 F.2d at 1488. In certain cases, scientific tests may be necessary to determine, for example, the existence or extent of contamination to the environment. If plaintiffs can show that medical testing is necessary to monitor the environmental effects of a "release" or "threatened release," the costs of such medical testing plainly fall within the purview of section 9601(25). Such testing is distinct from the health assessment studies available under section 9604(i) and from a claim for medical monitoring available under Colorado common law. *See infra.* Moreover, if the environmental effects of a release could not be monitored adequately without some medical testing, it would be incompatible with CERCLA not to allow recovery for the costs of such tests. *Cf. Werlein,* 746 F.Supp. at 904 n. 18.

Accordingly, defendants' motions to dismiss will be denied as to the portion of plaintiffs' CERCLA claim that seeks to recover the costs of medical testing necessary to monitor the environmental effects of defendants' alleged releases. Defendants' motions to dismiss will be granted for all other medical testing costs sought under CERCLA.

Defendants also argue that the complaint is defective for failure to specify at least one cognizable response cost. I agree, but conclude that plaintiffs should be granted leave to amend.

■ As stated above a plaintiff must incur response costs consistent with the

"national contingency plan." The complaint reads:

> As a proximate result of the releases and threatened releases of hazardous substances into the environment surrounding Rocky Flats, plaintiffs William Jr. and Delores Schierkolk, Richard and Sally Bartlett, and members of plaintiff Class I have incurred and will continue to incur necessary response costs consistent with the National Contingency Plan.

Amended Complaint, ¶ 118.

Conclusory allegations which merely mirror the terms of the statute are insufficient. The complaint must specify at least one cognizable response cost incurred by each named plaintiff prior to filing the lawsuit. As was stated by the Ninth Circuit in *Ascon:*

> Requiring a CERCLA claimant to plead a cognizable response will assist in the proper processing of these actions. There has been extensive litigation over which types of response costs are recoverable in a section 107(a) action.... [I]f a plaintiff ultimately fails to show a proper response cost, then he will fail to prove his prima facie case.... It therefore makes sense to impose a pleading requirement that a claimant must allege at least one type of response cost cognizable under CERCLA in order to make out a prima facie case.

866 F.2d at 1154. *See also McGregor v. Industrial Excess Landfill, Inc.,* 856 F.2d 39, 42 (6th Cir.1988) (per curium); *Ambrogi,* 750 F.Supp. at 1250–53 (M.D.Pa.1990); *Jones v. Inmont Corp.,* 584 F.Supp. 1425, 1429 (S.D.Ohio 1984).

■ Such a requirement is consistent with the notice pleading requirement of the Federal Rules of Civil Procedure. Pleadings do more than merely give notice; they also serve to identify meritless claims at an early stage in the litigation. As was stated in *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), "all the Rules require is 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is *and the grounds upon which it rests.*" *Id.* at 47, 78 S.Ct. at 103 (emphasis added) (quoting Fed.R.Civ.P. 8(a)). This last phrase from *Conley* suggests that the Federal Rules " 'do contemplate a statement of circumstances, occurrences, and events in support of the claim being presented.' " *McGregor,* 856 F.2d at 42 (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1215 (1969)).

In certain types of cases, a plaintiff may not rest on mere conclusory allegations that trace the language of the statute. "[A] complaint in a complex, multi-party suit may require more information than a simple, single party case." *Mountain View Pharmacy v. Abbott Laboratories,* 630 F.2d 1383, 1386–87 (10th Cir.1980). *See also Blinder, Robinson & Co. v. United States SEC.,* 748 F.2d 1415, 1386–87 (10th Cir.1984), *cert. denied,* 471 U.S. 1125, 105 S.Ct. 2655, 86 L.Ed.2d 272 (1985). In a complex case such as this, it is consistent with the Federal Rules to ferret out meritless claims at the outset. *See* Fed.R.Civ.P. 1. As the Supreme Court has stated, "in a case of this magnitude, a district court must retain the power to insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed." *Associated General Contractors, Inc. v. California State Council of Carpenters,* 459 U.S. 519, 528 n. 17, 103 S.Ct. 897, 903 n. 17, 74 L.Ed.2d 723 (1983) (dictum).

Plaintiffs concede that CERCLA requires that they incur some response cost prior to filing their complaint. If plaintiffs have incurred no cognizable response costs, it is appropriate to dispose of the CERCLA claim at the outset. On the other hand, if plaintiffs have incurred cognizable response costs, it presents no undue burden to identify them in the complaint. I conclude that to withstand a 12(b)(6) motion to dismiss, plaintiffs must identify in their complaint at least prefiling response cost cognizable under CERCLA.

Plaintiffs argue that there should be no need to plead previously incurred response costs because attorney fees are a cognizable response cost under CERCLA. Plaintiffs argue that the preparation of a CERCLA claim necessarily entails legal expense.

Thus, there should be no need to recite that fact in the complaint.

Authority is divided as to whether a private party's attorney fees are recoverable under CERCLA. *Compare Pease & Curren Refining, Inc. v. Spectrolab, Inc.,* 744 F.Supp. 945, 949–952 (C.D.Cal.1990) (attorney fees recoverable by private party) *with T & E Industries, Inc. v. Safety Light Corp.,* 680 F.Supp. 696 (D.N.J.1988) (attorney fees not recoverable by private party). However, even assuming that attorney fees are recoverable by a private party, plaintiffs' argument still lacks merit.

■ CERCLA's private right of action is meant to compensate plaintiffs for "necessary costs of response." 42 U.S.C. § 9607(a)(4)(B). If no costs have been incurred, then it is unnecessary to incur attorney fees to begin an enforcement proceeding. A plaintiff who has incurred no costs, except for litigation expenses, prior to the filing of a CERCLA action has incurred no "necessary costs of response" under § 9607(a).

Plaintiffs move for leave to amend under Fed.R.Civ.P. 15(a). This motion will be granted and defendants' motions to dismiss this claim will be denied provided that plaintiffs file an adequate amended complaint within 20 days. The complaint must plead at least one cognizable response cost incurred prior to the filing of this action by each named plaintiff who is asserting a CERCLA claim.

B. *Medical Monitoring Under Price Anderson and Colorado Common Law*

Plaintiffs Michael Dean Rice (Rice), Thomas and Rhonda Deimer (collectively, the Deimers), and Stephen and Peggy Sandoval (collectively, the Sandovals) plead a claim for medical monitoring and health studies, not under CERCLA, but under Price Anderson and Colorado common law. For relief they seek the costs of individual periodic monitoring and a fund to finance "independent scientific studies of adverse health effects in the population living and working around Rocky Flats and of exposure of the population to radioactive and other hazardous substances." Amended Complaint at 24. Rockwell moves to dismiss their claim for these generalized scientific studies. Rockwell also argues that the claim for medical monitoring is deficient for failure to allege exposure to a toxic substance. I agree that the claim for generalized scientific studies must be dismissed, but I conclude that, with leave to amend, plaintiffs may state a cognizable claim for the costs of individual medical monitoring.

Alleged exposure to toxic substances raise unique issues under traditional common law tort theory. For instance, injuries resulting from exposure to toxic substances are often latent. This latency presents seemingly insurmountable problems of proof when analyzed under traditional tort theory because, under traditional tort theory, physical injury must be proved as an element of liability.

In response to this problem courts have recognized "non-traditional" tort claims, which afford relief even though a plaintiff has not yet manifested present physical injury. Thus, courts have allowed claims for emotional distress suffered because of fear of contracting a toxic exposure disease. *See, e.g., Sterling v. Velsicol Chemical Corp.,* 855 F.2d 1188, 1206 (6th Cir. 1988) (applying Tennessee law). Other courts have recognized claims for enhanced risk of future harm. *See, e.g., Hagerty v. L & L Marine Services, Inc.,* 788 F.2d 315, 319 (5th Cir.1986). Courts have also recognized claims for "medical monitoring." *See, e.g., In re: Paoli Railroad Yard PCB Litigation,* 916 F.2d 829 (3d Cir.1990).

■ A claim for medical monitoring is distinct from a claim for enhanced risk of future harm. "[A]n action for medical monitoring seeks to recover only the quantifiable costs of periodic medical examinations necessary to detect the onset of physical harm, whereas an enhanced risk claim seeks compensation for the anticipated harm itself, proportionately reduced to reflect the chance that it will not occur." *Id.* at 850. In this case, plaintiffs do not seek damages for the anticipated harm itself. Plaintiffs' Brief at 30. Rather, they seek medical monitoring and surveillance servic-

es. As such, I need only analyze the tort of medical monitoring.

The theory behind a claim for medical monitoring is simple. When a plaintiff is exposed to a hazardous substance, it is often sound medical practice to seek periodic medical monitoring to ascertain whether the plaintiff has contracted a disease. Because this need for medical monitoring was caused by a defendant's tortious acts or omissions, a defendant may be required to pay the cost of monitoring. This theory is illustrated by the hypothetical discussed by the D.C.Circuit in *Friends For All Children, Inc. v. Lockheed Aircraft Corp.*, 746 F.2d 816, 825 (D.C.Cir.1984):

> Jones is knocked down by a motorbike when Smith is riding through a red light. Jones lands on his head with some force. Understandably shaken, Jones enters a hospital where doctors recommend that he undergo a battery of tests to determine whether he has suffered any internal head injuries. The tests prove negative, but Jones sues Smith solely for what turns out to be the substantial cost of the diagnostic examinations.
>
> From our example, it is clear that even in the absence of physical injury Jones ought to be able to recover the cost for the various diagnostic examinations proximately caused by Smith's negligence action.

Courts have generally accepted tort claims for medical monitoring. *See Paoli Railroad*, 916 F.2d at 850–52. In *Paoli Railroad*, the Third Circuit followed the weight of authority and predicted that the Pennsylvania Supreme Court would allow a cause of action for medical monitoring. 916 F.2d at 852. The court listed the following elements necessary to establish a cause of action for medical monitoring:

i. Plaintiff was significantly exposed to a proven hazardous substance through the [tortious] actions of defendant;

ii. As a proximate result of exposure, plaintiff suffers an increased risk of contracting a serious latent disease;

iii. That increased risk makes periodic diagnostic medical examinations reasonably necessary; and

iv. Monitoring and testing procedures exist which make the early detection and treatment of the disease possible and beneficial.

*Id.* *See also Ayers v. Township of Jackson*, 106 N.J. 557, 525 A.2d 287, 312 (1987).

Although Colorado has yet to do so, I conclude that the Colorado Supreme Court would probably recognize, in an appropriate case, a tort claim for medical monitoring.

### 1. Individual medical monitoring

■ Plaintiffs' complaint is deficient in pleading a claim for individual medical monitoring because it fails to allege that plaintiffs have been exposed to a toxic substance. *See Paoli Railroad*, 916 F.2d at 852; *Askey v. Occidental Chemical Corp.*, 102 A.D.2d 130, 477 N.Y.S.2d 242, 248 (N.Y.App.Div.1984).

Plaintiffs argue that they have alleged exposure in paragraphs 17 and 44 of their amended complaint. Paragraph 17 of plaintiffs' amended complaint reads in part: "defendants ... have caused a *risk* of injury to persons living and working in the vicinity of [Rocky Flats]." (Emphasis added). As plaintiffs point out in their brief, "injury" in non-traditional tort cases refers not to physical harm but instead to the invasion of any legally protected interest. Plaintiffs' Brief at 30. In this case the alleged injury is exposure to a hazardous substance. Accordingly, the allegation of "risk of injury" simply means risk of exposure. Mere risk of exposure is insufficient.

In paragraph 44 of the amended complaint plaintiffs allege that defendants caused "the creation of an excess, but presently unmeasured, risk of harm from adverse health effects." Again, the allegation of mere risk of exposure and not exposure in fact is inadequate.

Because plaintiffs might be able to correct this pleading deficiency, their claim for individual medical monitoring will not now be dismissed. Instead, plaintiffs' motion for leave to amend will be granted. Plaintiffs have 20 days to file an adequate amended complaint which alleges that Rice, the Deimers, and the Sandovals have each

been significantly exposed to a proven hazardous substance.

### 2. Fund for scientific studies

 Even assuming that the Colorado Supreme Court would recognize a tort claim for individualized medical monitoring, I do not believe that the Colorado Supreme Court would recognize as cognizable plaintiffs' claim for generalized scientific studies.

A medical monitoring claim compensates a plaintiff for diagnostic treatment, a tangible and quantifiable item of damage caused by a defendant's tortious conduct. Such relief is akin to future medical expenses. The claim does not compensate a plaintiff for testing others to determine the odds that a particular person might contract a disease. *See, e.g., Paoli Railroad*, 916 F.2d at 850 ("an action for medical monitoring seeks to recover only the quantifiable costs of periodic medical examinations necessary to detect the onset of physical harm"); *Ayers*, 525 A.2d at 314 (relief should insure that "medical-surveillance damages will be paid only to compensate for medical examinations and tests actually administered").

Plaintiffs have cited no authority for their common law claims to recover the costs of generalized scientific studies. I discern no basis for such a claim. Thus, I hold that the scientific studies requested by plaintiffs here are not recoverable under a medical monitoring cause of action. Accordingly, Rockwell's motion to dismiss the portions of the complaint that seek such studies will be granted.

### C. *Outrageous Conduct*

Defendants move to dismiss plaintiffs' claim of outrageous conduct. This motion will also be denied provided that plaintiffs file an adequate amended complaint within 20 days.

The tort of outrageous conduct was first recognized by Colorado in *Rugg v. McCarty*, 173 Colo. 170, 476 P.2d 753 (1970). The *Rugg* court adopted verbatim the elements of the tort from the *Restatement (Second) of Torts* § 46:

One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm. *Rugg*, 476 P.2d at 756.

 The tort has four elements: (1) defendant's conduct must be extreme and outrageous; (2) it must be intentional or reckless; (3) it must cause emotional distress; and (4) the emotional distress must be severe. *Malandris v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 703 F.2d 1152, 1158 (10th Cir.1981) (applying Colorado law), *cert. denied*, 464 U.S. 824, 104 S.Ct. 92, 78 L.Ed.2d 99 (1983).

Defendants argue that plaintiffs' claim of outrageous conduct should be dismissed for four reasons: (1) plaintiffs do not allege any conduct on the part of defendants that a reasonable jury could conclude was outrageous; (2) plaintiffs do not allege the type, nature, or extent of the severe emotional distress; (3) plaintiffs do not allege that they suffer from severe emotional distress; and (4) plaintiffs do not allege that either of the defendants acted with the requisite state of mind.

The first argument is without merit. The complaint alleges sufficient conduct on the part of defendants to allow a jury to conclude that the defendants' conduct was outrageous.

Defendants' second argument is also without merit. Defendants maintain that conclusory allegations of severe emotional distress without factual allegations which indicate the nature or extent of any mental suffering are insufficient. However, I conclude that plaintiffs' allegations in this regard are sufficient.

 Defendants' third argument is persuasive. Severe emotional distress is an element of the tort of outrageous conduct. Plaintiffs have not pleaded this element. The complaint is thus defective.

Defendants' fourth argument is also persuasive.

The requisite intent is present where the actor desires to inflict severe emo-

tional distress and knows that it is substantially certain to result from his conduct, or where he acts recklessly "in deliberate disregard of a high degree of probability that the emotional distress will follow."

*Malandris*, 703 F.2d at 1159 (quoting *Restatement (Second) of Torts* § 46, comment i).

The complaint does not allege that defendants intended to inflict severe emotional distress or that defendants acted "recklessly in the deliberate disregard of the high probability that emotional distress will follow."

Plaintiffs have moved for leave to amend their complaint under Fed.R.Civ.P. 15(a). Such leave should be freely granted. Accordingly, the motions to dismiss the outrageous conduct claim will be denied provided that plaintiffs file an adequate amended complaint within 20 days.

### D. *Misrepresentation and Concealment*

Defendants move to dismiss plaintiffs' claims for misrepresentation and concealment, contending that plaintiffs failed to plead these claims with particularity as required by Fed.R.Civ.P. 9(b). Because the complaint is fatally defective in failing to plead detrimental reliance, defendants' motions to dismiss this claim will be granted.

 Detrimental reliance is an element of a misrepresentation or concealment claim under Colorado law. *Alzado v. Blinder, Robinson & Co.*, 752 P.2d 544, 558 (Colo.1988) (misrepresentation); *Eckley v. Colorado Real Estate Comm'n*, 752 P.2d 68, 78 (Colo.1988) (concealment). This element must be pled with particularity. *Learning Works, Inc. v. Learning Annex, Inc.*, 830 F.2d 541, 546 (4th Cir.1987).

 Plaintiffs' allegation of detrimental reliance is that they "relied upon [the alleged misrepresentations and concealments] in refraining until the present from seeking redress or pursuing remedial action" with the result that "many of the releases of hazardous substances into the environment have been compounded by the passage of time." Amended Complaint at ¶¶ 101–02. Such allegations may counter a

statute of limitations defense. *See First Interstate Bank, N.A. v. Piper Aircraft Corp.*, 744 P.2d 1197 (Colo.1987). However, these allegations are insufficient as a matter of law to establish detrimental reliance. *Werman v. Malone*, 750 F.Supp. 21, 23 (D.Me.1990) (dismissing misrepresentation claim where only detrimental reliance alleged was that plaintiffs refrained from filing suit as a result of defendants' misrepresentations).

Plaintiffs again request leave to file an amended complaint under Fed.R.Civ.P. 15(b). Although leave to amend is to be freely granted, such leave need not be granted where the defective pleading cannot be cured. *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); *Schepp v. Fremont County*, 900 F.2d 1448, 1451 (10th Cir.1990). It is apparent from plaintiffs' complaint viewed in its entirety that the detrimental reliance allegedly suffered by plaintiffs is insufficient as a matter of law to establish this element of their claim. Amending this count would be futile. Thus, plaintiffs' motion for leave to amend this claim for relief will be denied and defendants' motions to dismiss this claim will be granted.

### E. *Punitive Damages*

Defendants contend that because the United States is required to indemnify them for an award of punitive damages, such an award is barred by 42 U.S.C. § 2210(s) and sovereign immunity. Rockwell's motion concerning this claim is for summary judgment. Dow's motion is one to dismiss under Fed.R.Civ.P. 12(b)(6). Because I consider matters outside of the pleadings, Dow's motion is treated as a motion for summary judgment under Rule 56. *See* Fed.R.Civ.P. 12(b)(6). I hold that punitive damages for nuclear incidents occurring on or after August 20, 1988 are barred by section 2210(s). However, I further hold that punitive damages for nuclear incidents occurring before that date are not barred by section 2210(s) or by sovereign immunity.

#### 1. Section 2210(s)

42 U.S.C. § 2210(s) reads:

No court may award punitive damages in any action with respect to a nuclear incident ... against a person on behalf of whom the United States is obligated to make payments under an agreement of indemnification covering such incident....

This section "shall become effective on the date of the enactment of this Act [August 20, 1988] and shall be applicable with respect to nuclear incidents occurring on or after such date." Pub.L. 100–104, § 20(a), Historical and Statutory Notes to 42 U.S.C.A. § 2014 (West Supp.1990).

### a. *Incidents Occurring On or After August 20, 1988*

Plaintiffs seek punitive damages for nuclear incidents occurring after August 20, 1988. It is not contested that defendants have indemnity agreements with the United States. The indemnification agreements show that the United States is obligated to indemnify defendants should either of them be required to pay damages in this "nuclear incident" case. Plaintiffs maintain that at this early stage of the case it is unclear whether the United States is "obligated" to pay for an award of punitive damages, and, consequently, it is unclear whether section 2210(s) applies. Thus, plaintiffs argue, the issue is not ripe for adjudication or they require discovery under Fed.R.Civ.P. 56(f). Plaintiffs misread section 2210(s).

 For this section to apply, it is not necessary that the United States be obligated to make *payments for punitive damages*. Rather, it is only necessary that "the United States [be] obligated to make *payments* under an agreement of indemnification covering [a nuclear] incident." 42 U.S.C. § 2210(s) (emphasis added). The obligation to indemnify for damages generally, not the obligation to indemnify for punitive damages, triggers application of the statute.

 This construction of the statute is supported by the legislative history to section 2210(s). The Senate Reports make clear that this section was meant to prohibit punitive damages against any DOE contractor indemnified under Price Anderson.

*See* S.Rep. No. 100–218, 100th Cong., 1st Sess. 12, *reprinted in* 1988 U.S.Code Cong. & Admin.News 1476, 1487 (under section 2210(s), "punitive damage awards would be prohibited in actions involving DOE contractors indemnified under" Price Anderson); S.Rep. No. 100–70, 100th Cong., 1st Sess. 27, *reprinted in* 1988 U.S. Code Cong. & Admin.News 1424, 1440 (section 2210(s) "prohibits courts from awarding punitive damages under State law in any action that involves a nuclear incident if the action is brought against a Department of Energy contractor, subcontractor or supplier indemnified under the Price Anderson Act").

Plaintiffs also contend that defendants do not have standing to raise this issue because it must be raised by the government. I disagree. Section 2210(s) bars punitive damages in any action against a contractor indemnified under Price Anderson. Thus, the contractor can raise this defense.

### b. *Incidents Occurring Before August 20, 1988*

Defendants contend that section 2210(s) bars all of plaintiffs' claims for punitive damages because they seek recovery for an extended, ongoing "nuclear incident" which began before, but occurred, at least in part, after August 20, 1988. I need not decide whether punitive damages arising out of an extended "nuclear incident" that began before August 20, 1988 and continued unabated until after that date are barred by section 2210(s), because, to the contrary, plaintiffs have alleged distinct "nuclear incidents" occurring before August 20, 1988.

As defined in 42 U.S.C. § 2014(q), "nuclear incident" means:

any occurrence ... within the United States causing ... bodily injury, sickness, disease, or death, or loss of or damage to property, or loss of use of property, arising out of or resulting from the radioactive, toxic, explosive, or other hazardous properties of source, special nuclear, or byproduct material....

The legislative history makes clear that a release may be either a distinct occurrence or an ongoing occurrence over a long period of time.

While most incidents will be happenings that can be pinpointed in time—such as a runaway reactor or an inadvertent exposure to radiation—it is not thought that an incident would necessarily have to occur within any relatively short period of time. For instance, the steady exposure to radiation, such as from an undetected leak of radio-active materials from a storage bin, could constitute an incident.

S.Rep. No. 296, 85th Cong., 1st Session 16, *reprinted in* 1957 U.S.Code Cong. & Admin.News 1803, 1817.

 Plaintiffs allege numerous releases that can be pinpointed in time before August 20, 1988. As such, these occurrences do not fall within 42 U.S.C. § 2210(s).

### 2. Sovereign immunity

 Defendants next contend that even if section 2210(s) does not bar an award of punitive damages for all of plaintiffs' claims, such damages are barred by sovereign immunity. Under the doctrine of sovereign immunity the United States cannot be sued without its consent. Defendants are obviously not the United States. However, they claim that because the United States is required to indemnify them for an award of punitive damages, and because the United States has not consented to be sued for punitive damages, sovereign immunity precludes such an award. Even assuming that the United States is obligated to indemnify defendants for an eventual award of punitive damages, sovereign immunity does not bar the punitive damage claim here.

 An indemnity agreement between the federal government and its contractor does not cloak the contractor with sovereign immunity. *Rochester Methodist Hospital v. Travelers Insurance Co.,* 728 F.2d 1006, 1012–16 (8th Cir.1984); *Foster v. Day & Zimmermann, Inc.,* 502 F.2d 867, 873–74 (8th Cir.1974); *Whitaker v. Harvell–Kilgore Corp.,* 418 F.2d 1010, 1014 (5th Cir. 1969); *Group Health, Inc. v. Blue Cross Ass'n,* 625 F.Supp. 69, 74–76 (S.D.N.Y. 1985); *see also Brady v. Roosevelt Steamship Co.,* 317 U.S. 575, 63 S.Ct. 425, 87 L.Ed. 471 (1943); *Griess v. Colorado,* 841 F.2d 1042, 1044–47 (10th Cir.1988) (state's obligation to indemnify defendants does not cloak defendants with state's Eleventh Amendment immunity).

Defendants attempt to distinguish these cases by arguing that this case concerns more than a "mere contractual indemnitee" of the United States. The Price Anderson Act authorizes indemnification agreements. 42 U.S.C. § 2210(d). It authorizes the United States to "take charge" and "settle or defend any such action." 42 U.S.C. § 2210(h). In addition, under regulation, the DOE may "require the prior approval of DOE" before any settlement by a contractor. 48 C.F.R. § 952.250–70(f).

These distinctions make no difference. Sovereign immunity attaches only to "claims ... that *by their nature must* be paid from public funds, not actions directed against individuals that may ultimately be satisfied with state monies solely because the [government] has chosen to provide indemnification." *Griess,* 841 F.2d at 1046 (emphasis added).

Moreover, before the 1988 amendments to Price Anderson, the United States was permitted, but not required, to enter into indemnification agreements. 42 U.S.C.S. § 2210(d) (1973). Thus, for occurrences not covered by section 2210(s), any duty to indemnify was not mandated by statute. In *Brady,* the Supreme Court rejected the argument that a suit against a private party should be treated as a suit against the United States because the private party had an indemnification agreement with the United States. The Court stated, "if [plaintiff] had a cause of action against [the private-party defendant], it is difficult to see how she could be deprived of it by reason of a contract between [defendant] and the [United States].... At least in the absence of a clear Congressional policy to that end, we cannot go so far." *Brady,* 317 U.S. at 583–84, 63 S.Ct. at 429–430.

Defendants' reliance on cases holding that sovereign immunity applies where a judgment will expend itself upon the federal treasury, *e.g., Brown v. General Services Administration,* 425 U.S. 820, 826–27, 96 S.Ct. 1961, 1964–65, 48 L.Ed.2d 402 (1976), is similarly misplaced. In this case,

a judgment would not be against the United States, it would be against the defendants. Any federal monies would not go to pay the judgment, but to pay defendants based on an independent contract. These are not "claims ... that by their nature must be paid from public funds." *Griess*, 841 F.2d at 1046. Consequently, sovereign immunity does not attach.

Defendants also rely on *In re Three Mile Island Litigation*, 605 F.Supp. 778, 784 (M.D.Pa.1985), in which the court disallowed punitive damages based on the government's duty to indemnify. This authority is not persuasive. It applied the doctrine of sovereign immunity without discussing the long line of cases holding that an indemnity agreement does not cloak a private party with sovereign immunity.

### 3. Col.Rev.Stat. § 13–21–102(2)

██ Lastly, defendants contend that because they are no longer operating the plant and because the DOE will indemnify them for any award of punitive damages, such damages are not available here since they "could not possibly serve any of the purposes for which [punitive] damages are permissible." Rockwell's Memorandum in Support of its Motions for Partial Summary Judgment on Plaintiffs' Claims For Exemplary Damages at 16.

Even assuming that the DOE must indemnify defendants for an eventual award of punitive damages, summary judgment is inappropriate. Under Col.Rev.Stat. § 13–21–102(2), a court has discretion to disallow an award of punitive damages where the purposes for such damages would not be served. However, this section permits a court to reduce or disallow punitive damages only after such damages have been awarded. *See, e.g.*, 13–21–102(2)(b) (punitive damages may be reduced or disallowed if, among other things, "[t]he conduct *which resulted in the award* has ceased) (emphasis added). Accordingly, under Colorado law disallowance of punitive damages because their award would serve no purpose is premature before trial.

### F. *Statute of Limitations*

Dow moves for summary judgment on all claims against it based on the statute of limitations. Because Dow has not met its burden, this motion is denied.

██ Plaintiffs have three types of claims: CERCLA claims; common law actions based on diversity; and the Price Anderson claims. Although the parties agree that Colorado law controls the diversity action, they disagree whether federal or Colorado law governs accrual of claims under the Price Anderson Act. This dispute is immaterial because both Colorado and the Tenth Circuit apply the same accrual standard: the limitations period begins to run when the person suffering legal injury knows or in the exercise of reasonable diligence should have known of the injury and its cause. *See* Colo.Rev.Stat. § 13–80–108; *Ebrahimi v. E.F. Hutton & Co.*, 852 F.2d 516, 523 (10th Cir.1988).

The parties further dispute whether the Price Anderson claims have the same limitations period as the analogous diversity claims. On the theory that the Price Anderson Act is "silent" on what limitations period should apply, Dow contends that Colo.Rev.Stat. § 13–80–102(1)(g) should apply. This section establishes a two-year limitations period for "[a]ll actions upon liability created by a federal statute where no period of limitations is provided in said federal statute."

██ This section does not apply because Price Anderson does provide a period of limitations. The Price Anderson Act mandates application of state substantive law. Statutes of limitations are substantive. *Walker v. Armco Steel Corp.*, 446 U.S. 740, 750–53, 100 S.Ct. 1978, 1985–86, 64 L.Ed.2d 659 (1980). Thus, for plaintiffs' Price Anderson claims, the Colorado statute of limitations specific to each state claim applies.

██ The parties also dispute whether claims arising before July 1, 1986 are covered by a six-year statute of limitations. Before its amendment in 1986, Colo.Rev. Stat. § 13–80–110 provided a six-year limitations period for all actions "for waste and for trespass upon land" and for "[a]ll other actions on the case, except actions for slander and libel." "The statute of limitation in effect when a cause of action accrues

governs the time within which a civil action must be commenced." *Rauschenberger v. Radetsky,* 745 P.2d 640, 642 (Colo.1987). Here, genuine issues of material fact remain as to when these actions accrued. Thus, it is unclear whether the six-year limitations period should apply.

Dow argues that, as a matter of law, the pervasive publicity surrounding Rocky Flats would have necessarily put a reasonable person on constructive notice of his or her claims long before even 1984 and, thus, all the claims are barred. I disagree.

The crux of the complaint is that because of Dow's tortious behavior, hazardous substances invaded plaintiffs' property and caused damages. Some plaintiffs live as far as six miles from Rocky Flats. The record does not establish when plaintiffs knew or should have known that hazardous substances allegedly released while Dow was operating Rocky Flats reached their property. Thus, the record does not establish when plaintiffs knew or should have known of their causes of action. Accordingly, Dow's motion for summary judgment based on the statute of limitations is denied.

### G. *Injunction to Prevent Further Releases*

Plaintiffs, among other things, seek an injunction "preventing further releases of plutonium and radioactive and non-radioactive substances from Rocky Flats." Amended Complaint ¶ e. Rockwell moves to dismiss this claim for relief because such relief cannot be granted in this case. I agree and will grant Rockwell's motion.

 A court will not grant an injunction when it would be ineffectual. *Thournir v. Buchanan,* 710 F.2d 1461, 1463 & n. 2 (10th Cir.1983); *United States v. Parish of St. Bernard,* 756 F.2d 1116, 1123 (5th Cir.1985) ("[i]t is black letter law than an injunction will not issue when it would be ineffectual"), *cert. denied,* 474 U.S. 1070, 106 S.Ct. 830, 88 L.Ed.2d 801 (1986).

 The complaint acknowledges that Rockwell no longer operates Rocky Flats. Amended Complaint ¶ 19. As such, Rockwell does not have the power to "prevent further releases" from the plant.

Plaintiffs argue that Rockwell can be ordered to "assist" in preventing further releases by disclosing certain information. The complaint does not request assistance or disclosure of information. Rather, it requests that Rockwell be enjoined to prevent further releases. Rockwell simply has no power or ability to comply with such an injunction.

 Plaintiffs also argue that Rockwell's motion should be denied because an injunction can be enforced against certain third parties who have notice of the injunction. Plaintiffs argument is fallacious because my power to effect injunctive relief against third parties derives from a valid injunction in the first instance against Rockwell, a party to this action. If, as here, I cannot enjoin Rockwell, then I cannot enjoin third parties not named in the complaint.

Accordingly, Rockwell's motion to dismiss plaintiffs' claim for an injunction to "prevent further releases" is granted.

### H. *Mootness and Lack of Grounds for Injunctive Relief*

Defendants' motions for summary judgment on plaintiffs' claims for a fund to finance future scientific studies are made moot by my dismissal of those claims.

Accordingly, it is ORDERED that:

(1) defendants' motions to dismiss the CERCLA claim for post-judgment costs are GRANTED; defendants' motions to dismiss the CERCLA claims for medical monitoring are DENIED as to the portion of plaintiffs' CERCLA claim that seeks to recover the costs of medical testing necessary to monitor the environmental effects of defendants' alleged releases; defendants' motions to dismiss are GRANTED for all other medical testing costs sought under CERCLA; defendants' motions to dismiss the entire CERCLA claim are DENIED provided that plaintiffs file an adequate amended complaint within 20 days;

(2) Rockwell's motion to dismiss the portion of plaintiffs' claim for medical monitoring that seeks general scientific studies is GRANTED; Rockwell's motion to dismiss the entire claim for medical moni-

toring is DENIED provided that plaintiffs file an adequate amended complaint within 20 days;

(3) defendants' motions to dismiss the outrageous conduct claim are DENIED provided that plaintiffs file an adequate amended complaint within 20 days;

(4) defendants' motions to dismiss the misrepresentation and concealment claim are GRANTED;

(5) defendants' motions for summary judgment on the claim for punitive damages are GRANTED for such damages arising out of nuclear incidents occurring on or after August 20, 1988. The motions are DENIED for punitive damages arising out of nuclear incidents occurring before August 20, 1988;

(6) Dow's motion for summary judgment based on the statute of limitations is DENIED;

(7) Rockwell's motion to dismiss plaintiffs' claim for an injunction to "prevent further releases" is GRANTED;

(8) defendants' motions for summary judgment based on mootness and lack of grounds for equitable relief are DENIED.