Joyce BREWER, et al.

v.

Jack E. RAVAN, Regional Administrator of the Environmental Protection Agency, et al.

No. 1–86–0061.

United States District Court, M.D. Tennessee, Columbia Division.

Feb. 29, 1988.

Lee England, Lawrenceburg, Tenn., and Albert J. Slap, Gerald J. Williams, Slap Williams & Cuker, Philadelphia, Pa., Mark R. Cuker, Ronald F. Brien, Lorraine J. Zwolak, Denise J. Baker, for plaintiffs.

John L. Chambers, Chambers Wyckoff & Kinnard, Nashville, Tenn., J. Kevin Buster, King & Spalding, Atlanta, Ga., for Duracell.

M. Clark Spoden, Dearborn & Ewing, Nashville, Tenn., Leonard J. Rivkin, Joseph J. Ortego, Rivkin, Radler, Dunne & Bayh, Uniondale, N.Y., for Emhart.

## MEMORANDUM

WISEMAN, Chief Judge.

This action was brought by plaintiffs, former employees of a capacitor manufacturing plant located in Waynesboro, Tennessee (Waynesboro Plant) and their families, against defendants Jack E. Ravan, Regional Administrator of the Environmental Protection Agency (EPA), Emhart Industries, Inc. (Emhart), and Duracell International, Inc. (Duracell). Plaintiffs' complaint alleges violations of four distinct federal environmental laws: (1) the Comprehensive Environmental Response Compensation and Liability Act of 1980 (CERCLA), 42 U.S.C. § 9601 *et seq.;* (2) the Resource Conservation and Recovery Act of 1976 (RCRA), 42 U.S.C. § 6901 *et seq.;* (3) the Federal Water Pollution Control or Clean Water Act of 1977 (CWA), 33 U.S.C. § 1251 *et seq.;* and (4) the Toxic Substances Con-trol Act of 1976 (TSCA), 15 U.S.C. §§ 2601 *et seq.* In their complaint, plaintiffs seek declaratory and extensive injunctive relief, as well as the imposition of civil penalties.

Defendants Emhart and Duracell have moved, pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6), to dismiss certain portions of plaintiffs' complaint for lack of subject matter jurisdiction and for failing to state a claim upon which relief can be granted.[1] For the following reasons, defendants' motions are granted in part and denied in part.

### Legal Discussion

#### I. *CERCLA Claim*

Plaintiffs' Second Cause of Action alleges that defendants Emhart and Duracell are liable to plaintiffs under 42 U.S.C. §§ 9607(a)(1)(B) and (a)(2)(B) respectively for necessary response costs incurred by plaintiffs as a result of defendants' activities. Plaintiffs also seek both civil penalties and injunctive relief. Defendant Emhart has moved to dismiss plaintiffs' CERCLA claim in its entirety, contending: (1) that plaintiffs have not incurred any recoverable "response costs" under CERCLA; and (2) that plaintiffs are not entitled to either civil penalties or injunctive relief under section 9607(a).

#### A. *Response Costs*

CERCLA's primary purpose is "to facilitate the prompt cleanup of hazardous waste sites by placing the ultimate financial responsibility for cleanup on those responsible for the hazardous wastes." *Walls v. Waste Resource Corp.,* 761 F.2d 311, 318 (6th Cir.1985). Given this purpose and the statutory language of CERCLA, courts have held almost unanimously that section 9607(a)(1–4)(B) creates a private cause of action against section 9607(a) responsible parties for the recovery of "necessary costs of response incurred ... consistent with the National Contingency Plan." *See id.*

In paragraphs 15 and 72 of their complaint, plaintiffs allege that they "have and will in the future incur" necessary re-

---

**1.** Duracell's motion to dismiss is limited to   plaintiffs' CWA claim.

sponse costs consistent with the national contingency plan "as a result of a release and/or threatened release of [PCBs] and other hazardous substances from the [Waynesboro] Plant." Plaintiffs' Complaint at 6, 15. Plaintiffs further allege, in paragraph 63 of their complaint, that they "have been or may be forced to perform, *inter alia,* soil testing, water monitoring, and medical tests and medical screening." *Id.* at 14. Defendant Emhart insists that paragraphs 15 and 72 state nothing more than unsupported legal conclusions and that paragraph 63, because it is pled in the disjunctive, "sheds no light on the type of costs incurred by plaintiffs." Memorandum of Emhart in Support of Motion to Dismiss at 21 n. 8. Emhart further contends that any expenses incurred by plaintiffs for medical testing or screening are not compensable "response costs" under section 9607(a).

Recent case law clearly indicates that a private citizen seeking to recover expenses or obtain declaratory relief under section 9607(a) "must affirmatively demonstrate that it *has incurred* " at least some necessary response costs consistent with the national contingency plan. *See Chaplin v. Exxon Corp.,* 25 E.R.C. 2009, 2013 (S.D. Tex.1986) [Available on WESTLAW, 1986 WL 13130] (emphasis added); *Levin Metals Corp. v. Parr–Richmond Terminal Co.,* 608 F.Supp. 1272, 1275 (N.D.Cal.1985). Because CERCLA does not define the term "necessary costs of response," however, courts have had considerable difficulty in applying section 9607(a). *See, e.g., Jones v. Inmont Corp.,* 584 F.Supp. 1425, 1429–30 (S.D.Ohio 1984) (noting that "response costs" is not defined by CERCLA and that "response" is defined only in a most indirect and ambiguous manner).

■ Although a comprehensive definition of "necessary costs of response" is somewhat elusive, most courts agree that on-site testing and investigative costs are recoverable under section 9607(a). *See Wickland Oil Terminals v. ASARCO, Inc.,* 792 F.2d 887, 892 (9th Cir.1986); *City of New York v. Exxon Corp.,* 633 F.Supp. 609, 617–18 (S.D.N.Y.1986); *Velsicol*

*Chemical Corp. v. Reilly Tar & Chemical Corp.,* 21 E.R.C. 2118, 2121–22 (E.D.Tenn. 1984). To the extent that plaintiffs allege that they have conducted onsite soil testing and water monitoring, therefore, they state a cognizable claim under section 9607(a).

■ Emhart contends, however, that expenses incurred as a result of "medical testing and medical screening" are not recoverable response costs under CERCLA. The Court agrees with Emhart that CERC-LA's legislative history clearly indicates that medical expenses incurred *in the treatment of personal injuries or disease* caused by an unlawful release or discharge of hazardous substances are not recoverable under section 9607(a). *See Chaplin,* 25 E.R.C. at 2011–12 (discussing legislative history of CERCLA on this issue); *Artesian Water Co. v. Government of New Castle County,* 605 F.Supp. 1348, 1356 n. 10 (D.Del.1985). To the extent that plaintiffs seek to recover the cost of medical testing and screening conducted *to assess the effect of the release or discharge on public health or to identify potential public health problems presented by the release,* however, they present a cognizable claim under section 9607(a). *See Inmont Corp.,* 584 F.Supp. at 1429–30; *Adams v. Republic Steel Corp.,* 621 F.Supp. 370, 376 (W.D.Tenn.1985) (citing *Inmont* ). *See also Velsicol,* 21 E.R.C. at 2121 (finding if "difficult to see how costs of identifying and determining how to allay the environmental problem presented" are not recoverable under section 9607(a)). Public health related medical tests and screening clearly are necessary to "monitor, assess, [or] evaluate a release" and, therefore, constitute "removal" under section 9601(23). *See* 42 U.S.C. § 9601(23). Because the term "response" is defined in section 9601(25) to mean, in part, "remove or removal," costs incurred as a result of conducting such tests and screening are recoverable response costs under section 9607(a). *See Inmont Corp.,* 584 F.Supp. at 1429–30. Although paragraph 63 of plaintiffs' complaint is pled in the disjunctive and it is unclear whether the medical tests and screening allegedly conducted by plaintiffs were public health related, at this early

stage of the proceedings, the Court cannot say that it appears beyond doubt that plaintiffs can prove no set of facts in support of their CERCLA claim. *See Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). For these reasons, plaintiffs' claim for response costs under CERCLA should not be dismissed.[2]

### B. *Appropriate Relief Under Section 9607(a)*

■ Assuming that plaintiffs have stated a cognizable claim under section 9607(a), defendant Emhart contends that plaintiffs are not entitled to either civil penalties or injunctive relief. As noted earlier in this opinion, it is well established that section 9607(a) creates a private cause of action to recover necessary costs of response. 42 U.S.C. § 9607(a)(1–4)(B) (1983). *See also Walls*, 761 F.2d at 317–18. Prior to amendment in 1986, however, CERCLA did not authorize civil penalties or injunctive relief in favor of private litigants. *See* 42 U.S.C. § 9659(c) (Supp.1987) (effective October 17, 1986). *See generally* V. Yannacone, Jr., B. Cohen & S. Davison, *Environmental Rights and Remedies* § 5:29 at 930–31 (Supp.1987).

Despite CERCLA's clear and unambiguous pre-amendment statutory language, plaintiffs urge the Court to interpret section 9607(a) liberally to permit recovery of civil penalties and injunctive relief. To do so, however, would be to strain beyond reason the language, scheme, and legislative history of the statute. *See State of New York v. Shore Realty Corp.*, 759 F.2d 1032, 1049–50 (2d Cir.1985); *Cadillac Fairview/California, Inc. v. Dow Chemical Co.*, 21 E.R.C. 1108, 1115–17 (C.D.Cal.1984) (both holding that injunctive relief unavailable under section 9607(a)).[3] *See also* 42 U.S.C. §§ 9606(b); 9609 (federal government may seek civil penalties only in two narrow circumstances—for violation of sec-

tion 106 abatement order and for failure to comply with requirements of section 9608). Therefore, to the extent plaintiffs' complaint seeks civil penalties and injunctive relief under CERCLA, it must be dismissed.

### II. RCRA Claim

Plaintiffs' Third Cause of Action alleges that defendants Emhart and Duracell:

(1) stored and disposed of and continue to store and dispose of hazardous waste without a RCRA permit in violation of 42 U.S.C. § 6925;

(2) engaged in and continue to engage in solid waste management practices which constitute the open dumping of solid and/or hazardous wastes in violation of 42 U.S.C. § 6945; and

(3) created an imminent or substantial endangerment to health and/or the environment as a result of (1) and (2).

Plaintiffs' Complaint at 16. Defendant Emhart has moved to dismiss plaintiffs' RCRA claim, contending: (1) that plaintiffs failed to comply with the notice requirement of RCRA; and (2) that plaintiffs' RCRA claim is based exclusively on the storage, disposal, and open dumping of PCBs, a substance regulated exclusively by other federal environmental laws.

### A. *Insufficient Notice*

■ The citizen suit provision of RCRA, 42 U.S.C. § 6972(a), provides that:

[A]ny person may commence a civil action on his own behalf—against any person ... who is alleged to be in violation of any permit, standard, regulation, condition, requirement, prohibition, or order which has become effective pursuant to this chapter; or ... against any person ... who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste

---

**2.** The question of consistency under the national contingency plan is a factual determination that "cannot be made on the basis of the pleadings but must await development of a factual record" *Pinole Point Properties, Inc. v. Bethlehem Steel Corp.*, 596 F.Supp. 283, 290 (N.D.Cal. 1984).

**3.** Only the federal government is permitted to obtain injunctive relief under CERCLA. 42 U.S. C. § 9606(a) (1983).

which may present an imminent and substantial endangerment to health or the environment.

42 U.S.C. § 6972(a)(1)(A–B) (Supp.1987). A citizen suit may not be commenced under RCRA, however, prior to the expiration of a particular period of time after the prospective plaintiff has given notice of the alleged violation or endangerment to the EPA administrator, the State in which the alleged violation or endangerment occurred, and the alleged violator or creator of the endangerment. *See* 42 U.S.C. § 6972(b)(1)(A); (b)(2)(A) (Supp.1987). Such notice must include "sufficient information to permit the recipient to identify:"

(1) the specific permit, standard, regulation, condition, requirement, or order which has allegedly been violated;

(2) the activity alleged to constitute a violation;

(3) the person or persons responsible for the alleged violation;

(4) the date or dates of the violation; and

(5) the full name, address, and telephone number of the person giving notice.

40 C.F.R. § 254.3(a) (1987).

The primary purpose not only of RCRA's, but of the other federal environmental law's notice requirements is "to give the EPA an opportunity to resolve issues regarding the interpretation of complex environmental standards by negotiation, unhindered by the threat of an impeding private lawsuit," and thereby reduce the volume of costly private environmental litigation. *Walls,* 761 F.2d at 317. Although compliance with RCRA's notice requirement "is a jurisdictional prerequisite to bringing suit against private defendants under the citizen suit provisions of RCRA," *id.,* the notice requirement should be applied flexibly "to avoid hindrance of citizen suits through excessive formalism." *Proffitt v. Commissioners, Township of Bristol,* 754 F.2d 504, 506 (3d Cir.1985), *quoted with approval in, Fishel v. Westinghouse Electric Corp.,* 617 F.Supp. 1531, 1536 (M.D.Pa.1985). With these guiding principles in mind, the Court now turns its attention to defendant Emhart's argument.

Emhart does not contend that plaintiffs violated the waiting-period provisions of RCRA's notice requirement, or that plaintiffs failed to provide them with *any* notice whatsoever. Instead, Emhart claims that the notice plaintiffs provided was substantively deficient. Although the notice provided by plaintiffs arguably was deficient in some respects, it clearly set forth: (1) the specific RCRA sections alleged to have been violated by defendants; (2) a generic description of the activity alleged to constitute the violation; (3) the location of the alleged violations; and (4) the names and addresses of the persons giving notice. Plaintiffs' actual notice, therefore, adequately served the intended purpose of RCRA's notice requirement. Consequently, Emhart's insufficient notice argument must be rejected.

**B.** *PCBs Not Regulated Under RCRA*

■ The Court agrees with defendant Emhart that polychlorinated biphenyls (PCBs) are not "hazardous wastes" under RCRA, but are regulated exclusively under other federal and state environmental statutes. *See United States v. Burns,* 512 F.Supp. 916, 918–19 (W.D.Pa.1981) (suit by federal government to obtain injunctive relief against imminent hazard presented by disposal of PCBs can only be brought under TSCA). *See also* R. Fortuna & D. Lennett, *Hazardous Waste Regulation: The New Era* 25 (1986); J. Quarles, *Federal Regulation of Hazardous Wastes* 69 (1982); D. Stever, *Law of Chemical Regulation and Hazardous Waste* § 502(2)(e)(iii) at 5–26 (2d ed. 1987). Although the EPA, at one time, indicated that it had made a "tentative decision" to integrate the RCRA's hazardous waste regulations with the TSCA's PCB regulations, *see* 45 Fed.Reg. 33,086 (1980), it has never done so. Furthermore, the EPA has never identified and listed PCBs as "hazardous wastes" pursuant to 42 U.S.C. § 6921(b)(1) (1983). *See* 40 C.F.R. § 261.30–261.33 (1985). Therefore, unless plaintiffs' RCRA claims are based on the storage, disposal, or open-dumping of other "hazardous wastes," they must be dismissed.

Plaintiffs' complaint alleges that defendants have stored, disposed of, and open-dumped "hazardous wastes" in violation of 42 U.S.C. §§ 6925 and 6945. Plaintiffs' complaint also alleges that by committing these violations, defendants have contributed to the creation of an imminent and substantial endangerment to public health and the environment. Plaintiffs' complaint, however, does not identify the particular "hazardous waste" defendants allegedly stored, disposed of, and open-dumped, or when and under what circumstances defendants committed these alleged acts. In short, plaintiffs' complaint simply retraces the relevant language of RCRA and alleges nothing more than unsupported legal conclusions. Although the Court must accept as true all *factual* allegations in plaintiffs' complaint, *see Nishiyama v. Dickson County, Tennessee*, 814 F.2d 277, 279 (6th Cir.1987), the Court need not accept as true "legal conclusions that may be alleged or that may be drawn from the pleaded facts." *Blackburn v. Fisk University*, 443 F.2d 121, 124 (6th Cir. 1971). Because plaintiffs' RCRA claim is based solely on "sweeping legal conclusions cast in the form of factual allegations," *Pauling v. McElroy*, 278 F.2d 252, 254 (D.C.Cir.), *cert. denied*, 364 U.S. 835, 81 S.Ct. 61, 5 L.Ed.2d 60 (1960), the Court grants defendant's motion to dismiss plaintiffs' RCRA claim. Such dismissal, however, is without prejudice to any request plaintiffs may make for leave to amend their complaint with respect to their RCRA claim. *See* Fed.R.Civ.P. 15(a).

### III. CWA Claim

Plaintiffs' Fourth Cause of Action alleges that defendants Emhart and Duracell violated section 301(a) of the CWA, 33 U.S.C. § 301(a) (1986), by discharging pollutants into the navigable waters of the United States in violation of their National Pollutant Discharge Elimination System (NPDES) permit.[4] More specifically, plaintiffs allege that defendants "violated the terms and conditions of NPDES permit No. TN0030732 for PCBs effluent limitations from at least December 1, 1979 to January 31, 1980 ... in March, April, and November, 1980 ... January, 1981, and at other times as may be determined through discovery." Plaintiffs' Complaint, ¶¶ 43–44, at 11. Defendants Emhart and Duracell contend that plaintiffs' CWA claim should be dismissed in its entirety for three reasons: (1) the applicable statute of limitations had run prior to the commencement of this lawsuit; (2) plaintiffs' complaint fails to allege any ongoing or continuing violations of the CWA; and (3) plaintiffs failed to comply with the CWA's notice requirement.[5]

Federal NPDES permits issued pursuant to section 402 of the CWA are generally enforced by the Administrator of the EPA through the issuance of compliance orders and the commencement of civil litigation. *See* 33 U.S.C. §§ 1319(a)–(b). In the absence of such enforcement, however, private citizens may initiate a civil action "against any person ... who is alleged to be in violation" of an effluent standard or limitation established by an NPDES permit. 33 U.S.C. § 1365(a)(1). Such a citizen suit may not be commenced prior to sixty days after the plaintiff has given notice of the alleged violation to, among others, the alleged violator(s). 33 U.S.C. § 1365(b)(1).

Recently, in *Gwaltney of Smithfield v. Chesapeake Bay Foundation*, —— U.S. ——, ——, 108 S.Ct. 376, 384–385, 98 L.Ed.2d 306 (1987), the United States Supreme Court held that the CWA's citizen suit provision "does not permit citizen suits for wholly past violations" of the CWA. Rather, the CWA's citizen suit provision "confers jurisdiction over citizen suits [only where] the citizen-plaintiffs make a good-faith allegation of continuous or intermittent violation." *Id.* In other words, the citizen-plaintiffs must allege that there is "a reasonable likelihood that a past pollu-

---

4. In addition, plaintiffs' Fourth Cause of Action alleges that defendants' actions presented an imminent and substantial endangerment to health and the environment.

5. As a related matter, defendants contend that injunctive relief under the CWA to abate an imminent and substantial endangerment is available only to the EPA.

ter will continue to pollute in the future." *Id.* at ——, 108 S.Ct. at 381. Citizen-plaintiffs, however, need not *"prove* their allegations of ongoing noncompliance before jurisdiction attaches." *Id.* ——, 108 S.Ct. at 385 (emphasis added).

██ In the present case, plaintiffs have failed to make even a threshold good-faith allegation of continuous or intermittent violation of the CWA. Instead, plaintiffs simply allege that defendants violated the CWA on several occasions more than five years ago.[6] Plaintiffs do not allege that these violations continued beyond January, 1981 nor do they allege that there is a reasonable likelihood that defendants will violate the CWA in the future. Furthermore, plaintiffs do not and, in fact, cannot allege that defendants were violating the CWA at the time this suit was filed. Given that defendant Emhart permanently closed the Waynesboro Plant in early 1985, approximately two years prior to the filing of this lawsuit, it is not at all surprising that plaintiffs, in response to defendants' motion to dismiss, argue only that private citizens may sue under the CWA for wholly past violations. This argument clearly was rejected by the Supreme Court in *Gwaltney.* Accordingly, plaintiffs' CWA claim must be dismissed for lack of subject-matter jurisdiction.

## IV. TSCA Claim

Plaintiffs' Fifth Cause of Action alleges that defendants Emhart and Duracell "have not complied and are not complying with" the PCB disposal regulations set forth at 40 C.F.R. § 761.60 (1987), in violation of 15 U.S.C. § 2614(1)(C) (1986). These PCB disposal regulations were promulgated by the EPA pursuant to the authority conferred upon it by 15 U.S.C. § 2605(e). Plaintiffs further claim that, as a result of defendants' actions, current conditions at the Waynesboro Plant pose an unreasonable risk of serious or widespread injury to public health or the environment. Defendant Emhart has moved to dismiss plaintiffs' TSCA claim, contending: (1) that plaintiffs did not properly invoke this Court's jurisdiction under TSCA;[7] (2) that plaintiffs failed to comply with TSCA's notice requirement;[8] (3) that plaintiffs may not seek civil penalties under TSCA and (4) that the injunctive relief available to plaintiffs under TSCA is limited to the restraint of ongoing violations.[9]

### A. *Civil Penalties*

██ Under TSCA's citizen suit provision, 15 U.S.C. § 2619(a)(1), a private party may commence a civil action "against any person ... who is alleged to be in violation of this [Act] or any rule promulgated under section 2603, 2604, or 2605 ... *to restrain such violation."* 15 U.S.C. § 2619(a)(1) (Supp.1987) (emphasis added). Neither the express language nor legislative history of TSCA, however, suggest that civil penalties are available to private plaintiffs in suits brought pursuant to section 2619(a)(1). *Cf.* H.R.Rep. No. 1341, 94th Cong., 2d Sess. 56 (1976). Nevertheless, plaintiffs urge the

---

6. Even if the Supreme Court had concluded that the CWA permitted citizen suits for wholly past violations, plaintiffs' CWA claim may have been barred by the five year federal statute of limitations for civil penalty actions codified at 28 U.S.C. § 2462. *See, e.g., Sierra Club v. Chevron U.S.A.,* 834 F.2d 1517 (9th Cir.1987) (holding that 28 U.S.C. § 2462 applied to actions brought under the CWA). Because the Court holds that plaintiffs have failed to make a good faith allegation of continuous or intermittent violation, however, it need not decide whether citizen suits under the CWA are subject to 28 U.S.C. § 2462.

7. Emhart argues that because plaintiffs did not cite TSCA's citizen suit provision in their complaint, their TSCA claim must be dismissed.

This argument is completely devoid of merit in light of the numerous references in plaintiffs' complaint to relevant TSCA sections and regulations.

8. This argument is rejected for the same reasons Emhart's notice argument under RCRA was rejected. Although the actual notice provided certainly was not perfect, it clearly served the intended purpose of the TSCA's notice requirement.

9. Defendants do not argue that plaintiffs have failed to state a claim upon which appropriate relief—a restraint of ongoing violations—may be granted. Emhart simply contends that plaintiffs are not entitled to the broad mandatory injunctive relief they seek.

Court to read TSCA's citizen suit provision in conjunction with TSCA's civil penalty provision, 15 U.S.C. § 2615(a), and hold that such penalties are available to private plaintiffs.

In essence, plaintiffs are asking this Court to ignore the plain meaning of TSCA's statutory language and create, by judicial fiat, a private cause of action for civil penalties. As defendant Emhart notes, even a cursory reading of TSCA's civil penalty provision reveals that only the Administrator of the EPA may assess civil penalties against violators of the TSCA. *See* 15 U.S.C. § 2615(a)(2)(A) ("civil penalty for a violation of section 2614 ... shall be assessed by the Administrator"). *See generally Law of Chemical Regulation and Hazardous Waste, supra*, § 2.07(3)(a) at 2–59 n. 202 (no monetary penalties may be sought in citizen suit under TSCA). Furthermore, the language and statutory scheme of TSCA clearly indicate that district courts do not have jurisdiction under TSCA to impose civil penalties. *See* 15 U.S.C. §§ 2606(a)–(b); § 2616 (1982). To the extent that plaintiffs seek civil penalties under TSCA, therefore, their complaint is dismissed.

## B. *Appropriate Injunctive Relief*

The Court agrees with defendant Emhart that the scope of prospective injunctive relief available in a TSCA citizen suit is limited to the restraint of ongoing violations. Although *the EPA* may seek other forms of mandatory injunctive relief under other provisions of the Act, *see, e.g.,* 15 U.S.C. § 2606(b) (1982), private plaintiffs may not, as plaintiffs here suggest, seek *any* relief available under TSCA to enforce its substantive provisions. Again, to adopt such an interpretation would be to ignore clear statutory language and disrupt TSCA's comprehensive statutory scheme. Accordingly, to the extent that plaintiffs' request far-reaching injunctive relief beyond that provided for by section 2619(a)(1)—a restraint of ongoing violations of TSCA—their TSCA claim must be dismissed.

## *Conclusion*

For the reasons stated above, the Court: (1) dismisses with prejudice plaintiffs' CERCLA claim to the extent that it seeks injunctive relief and civil penalties; (2) dismisses without prejudice plaintiffs' RCRA claim in its entirety; (3) dismisses with prejudice plaintiffs' CWA claim in its entirety; and (4) dismisses with prejudice plaintiffs' TSCA claim to the extent that it seeks civil penalties and injunctive relief beyond that provided for by 15 U.S.C. § 2619(a)(1)—a restraint of ongoing violations.