**Donald Robert WOODMAN; Yvonne E. Woodman; Scott Forrest Woodman; Candra Dawn Woodman; and Steven Dwight Woodman, Plaintiffs,**

v.

**UNITED STATES of America; Waste Control of Florida, Inc.; Waste Management, Inc.; and Refuse Services, Inc.,[1] Defendants.**

No. 87–116–Civ–J–14.

United States District Court,
M.D. Florida,
Jacksonville Division.

May 21, 1991.

---

1. Throughout this motion, defendants Waste Control of Florida, Inc., Waste Management, Inc., and Refuse Services, Inc., will be referred to as the "Waste Haulers."

Harold S. Lippes and Terrance E. Schmidt, Bledsoe, Schmidt, Lippes & Adams, P.A., Jacksonville, Fla., Merrill G. Davidoff and Steven H. Doto, Berger & Montague, Philadelphia, Pa., Erwin A. Sherman and John Osborne, Sherman and Osborne, Louisville, Ky., Ronald Simon; Connerton, Ray & Simon, Washington, D.C., for plaintiffs.

S. Michael Scadron, U.S. Dept. of Justice, Washington, D.C., for defendant U.S.

John A. DeVault, III and Michael D. Whalen, Bedell, Dittmar, DeVault & Pillans, P.A., Jacksonville, Fla., for defendants Waste Control of Florida, Inc., Waste Management, Inc. and Refuse Services, Inc.

## ORDER

SUSAN H. BLACK, Chief Judge.

This case is before the Court on the United States' Motion to Dismiss the Eighth Cause of Action or, in the Alternative, to Strike Plaintiffs' Claim and for Partial Summary Judgment, filed on Febru-ary 4, 1991. The plaintiffs filed a response in opposition on March 5, 1991. On April 22, 1991, the Government filed a notice of supplemental authority in support of its motion.

Also pending before the Court is Defendant Waste Haulers' Motion to Dismiss or for Judgment on the Pleadings or, in the Alternative, for Partial Summary Judgment as to Count VII, filed on February 4, 1991. On March 26, 1991, the plaintiffs filed a response in opposition, to which the Waste Haulers filed a reply on April 10, 1991. The Court heard oral argument on March 19, 1991.

## I. THE GOVERNMENT'S MOTION

Count Eight of the Plaintiffs' Second Amended Complaint alleges a cause of action against the Government and the Department of Navy for reimbursement of response costs pursuant to § 107(a) of the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. §§ 9601–9675 [hereinafter "CERCLA"]. The plaintiffs allege that as a result of the release of the hazardous substances into and from the Hipps Road Landfill, they have incurred, and will continue to incur, costs in response to the release of these hazardous substances, including, but not limited to, costs of obtaining medical surveillance and an alternative water supply. Second Amended Complaint at 47, ¶ 92, filed on September 5, 1989.

In its motion, the Government alleges that the plaintiffs' costs are either not CERCLA "response costs" or are not costs the plaintiffs actually incurred. Relying upon *Coburn v. Sun Chemical Corp.*, 28 Env't Rep.Cas. (BNA) 1665, 1988 WL 120739 (E.D.Pa. Nov. 9, 1988), and its progeny, the Government contends that the legislative history, Congress' intent in enacting CERCLA, and the language of CERCLA indicate that medical surveillance does not constitute a CERCLA response cost. The Government further contends that since the City of Jacksonville, Florida, provided the alternative source of water for the plaintiffs, the plaintiffs have not in-

curred any costs for obtaining an alternative water supply.[2]

In response, the plaintiffs contend that the Government has misstated their claims and the law regarding medical monitoring costs. The plaintiffs allege that they are seeking response costs for both past and future expenses. The past expenses include buying books and photocopying reports regarding wastewater contamination, as well as attending specialized and technical conferences and the resultant transportation, lodging, and meal costs. The plaintiffs contend that none of the cases cited by the Government address expenditures already made. Relying upon *Brewer v. Ravan*, 680 F.Supp. 1176 (M.D.Tenn.1988), the plaintiffs state that medical monitoring is a recoverable response cost.

Additionally, the plaintiffs state that they have expended money to obtain an alternative water supply. The plaintiffs contend that they had to dig a trench and lay pipe in order to hook their home to the public water line installed by the City of Jacksonville. These expenditures totalled $600.00 for the plumbing, pipes, and water meter. Plaintiffs' Memorandum in Support of Their Opposition to Defendants' Motion to Dismiss Plaintiffs' CERCLA Claim, Exhibit A at 1, ¶ 4, filed on March 5, 1991. Additionally, the plaintiffs allege that they expended more than $100.00 purchasing bottled water for a period of six months. *Id.* at ¶ 3. Lastly, the plaintiffs state that they paid $25.00 for signs to keep people away from the contamination and landfill. *Id.* at 2, ¶ 5.

At oral argument, the Government and the Waste Haulers conceded that, if proven, the plaintiffs' expenditures for connecting to the water line provided by the City of Jacksonville and their expenditures for bottled water are proper CERCLA response costs. Transcript of Hearing on Pending Motions at 45, 55, filed on March 29, 1991 [hereinafter "Transcript"]. Therefore, the Court need only determine whether the plaintiffs' other expenditures qualify as CERCLA response costs.

## A. CERCLA RESPONSE COSTS

■ The Court finds that future medical monitoring expenses are not CERCLA response costs. In reaching this decision, the Court relies upon the comprehensive analysis of District Court Judge Weiner in *Coburn v. Sun Chemical Corp.*, 28 Env't Rep.Cas. (BNA) 1665, 1988 WL 120739 (E.D.Pa. Nov. 9, 1988), and its progeny. *See Bolin v. Cessna Aircraft Co.*, 759 F.Supp. 692 (D.Kan.1991); *Ambrogi v. Gould, Inc.*, 750 F.Supp. 1233 (M.D.Pa. 1990); *Werlein v. United States*, 746 F.Supp. 887 (D.Minn.1990); *Lutz v. Chromatex, Inc.*, 718 F.Supp. 413 (M.D.Pa. 1989). The Court can add nothing to "the *Coburn* court's indepth analysis and conclusion based on its interpretation of the legislative history, the language of the statute, and the overall purpose of the Act." *Ambrogi*, 750 F.Supp. at 1246 (footnote omitted). Rather than add unnecessarily to the length of this Order, the Court adopts that portion of the opinion, *Coburn*, 28 Env't Rep.Cas. at 1666–1671, which discusses CERCLA response costs. *See Lutz v. Chromatex, Inc.*, 718 F.Supp. 413, 418 (M.D.Pa.1989) ("the court will simply adopt the rationale of the *Coburn* court as its own").

The Court additionally finds that, contrary to the plaintiffs' contention, *Brewer v. Ravan*, 680 F.Supp. 1176 (M.D.Tenn. 1988), does not state that all medical monitoring costs are CERCLA response costs.[3]

2. On March 17, 1989, the City of Jacksonville filed suit against the Government and Waste Control of Florida, Inc., to recover the response costs incurred "to construct a new water line to persons living in the vicinity of the [Hipps Road Landfill] site, because their wells had become contaminated by hazardous substances from the site." *City of Jacksonville v. Wastecontrol of Florida, Inc.*, Case No. 89–237–Civ–J–12, Complaint at 3, ¶ 17, filed on March 17, 1989. As a result of the lawsuit, the Government and Waste Control of Florida, Inc., each paid a portion of the City of Jacksonville's costs for supplying the plaintiffs with city water. *Id.*, Joint Motion to Dismiss, filed on July 17, 1990. The case was dismissed with prejudice on July 19, 1990. *Id.*, Order Dismissing Case, filed on July 19, 1990.

3. Of the cases which the plaintiffs have cited in support of their position, only *Brewer v. Ravan*, 680 F.Supp. 1176 (M.D.Tenn.1988), provided a thorough analysis. In *Jones v. Inmont Corp.*,

A close reading of the case reveals that the court held that "CERCLA's legislative history clearly indicates that medical expenses incurred *in the treatment of personal injuries or disease* caused by an unlawful release or discharge of hazardous substances are not recoverable under section 9607(a)." *Brewer,* 680 F.Supp. at 1179 (emphasis in original). However, the court did hold that "the cost of medical testing and screening conducted *to assess the effect of the release or discharge on public health or to identify potential public health problems presented by the release*" do constitute recoverable response costs under CERCLA. *Id.* (emphasis in original). Thus, the *Brewer* court limited its holding to those costs which are for the public in general and not for an individual's medical treatment.[4] Since the plaintiffs' claim for medical monitoring does not relate to the public health, but instead, relates to each individual plaintiff's health, even under the *Brewer* analysis, the plaintiffs' claim does not constitute a CERCLA response cost.

Lastly, in light of the analysis provided in *Coburn,* the Court finds that the plaintiffs' expenses for buying books and photocopying reports, attending conferences and the resultant transportation, lodging, and meal costs, and the $25.00 cost of posting signs do not constitute CERCLA response costs. These expenses did not advance the purpose of the act—"the prompt, thorough, and cost-effective cleanup of a hazardous waste site." *Ambrogi,* 750 F.Supp. at 1248.

In summary, the Court finds that all of the plaintiffs' expenditures other than their expenditures for connecting to the water line provided by the City of Jacksonville and their expenditures for bottled water are not CERCLA response costs. Therefore, the Court will grant in part and deny in part the United States' Motion to Dismiss the Eighth Cause of Action or, in the Alternative, to Strike Plaintiffs' Claim and for Partial Summary Judgment, filed on February 4, 1991.

## II. THE WASTE HAULERS' MOTION

Count Seven of the Second Amended Complaint alleges a cause of action against the Waste Haulers for reimbursement of response costs pursuant to § 107(a) of CERCLA. The plaintiffs allege that as a result of the release of the hazardous substances into and from the Hipps Road Landfill, they have incurred and will continue to incur costs in response to the release of these hazardous substances, including but not limited to costs of obtaining medical surveillance and an alternative water supply. Second Amended Complaint at 46, ¶ 87, filed on September 5, 1989.

 In their motion, the Waste Haul-

---

584 F.Supp. 1425, 1430 (S.D.Ohio 1984), the court simply stated that it would be premature to attempt to decide if medical testing costs did not constitute a CERCLA response cost. In *Bulk Distribution Centers, Inc. v. Monsanto Co.,* 589 F.Supp. 1437 (S.D.Fla.1984), the court only restated the decision in *Jones*—that "a response action taken to mitigate damage to public drinking water . . ., *possibly* including monitoring . . ., *might* be recoverable under section 9607." *Monsanto,* 589 F.Supp. at 1454 n. 30 (emphasis in original). The court in *Adams v. Republic Steel Corp.,* 621 F.Supp. 370, 376 (W.D.Tenn. 1985), stated that medical testing constituted a CERCLA response cost. However, the court failed to provide any analysis for its decision and its one-line holding was supported by a citation to *Jones.* Lastly, in *Williams v. Allied Automotive,* 704 F.Supp. 782, 784 (N.D.Ohio 1988), the court, relying upon *Brewer,* stated that it was of the opinion that the costs of future medical monitoring were not categorically unrecoverable as CERCLA response costs.

**4.** At oral argument, the plaintiffs supplied the Court with additional authority in support of their position. The Court finds that *Cook v. Rockwell Int'l Corp.,* 755 F.Supp. 1468 (D.Colo. 1991), does not support the plaintiffs' contention that future medical monitoring expenses for individual plaintiffs qualify as CERCLA response costs. In *Cook,* the court stated that:

[t]he *Coburn* line of cases is persuasive authority that the costs of medical testing to monitor the *health* effects of a release or threatened release are not recoverable under section 9607(a). However, I conclude that the costs of medical testing necessary to monitor the *environmental* effects of a release or threatened release fall within the definition of "remove."

*Cook,* 755 F.Supp. at 1474 (emphasis in original).

ers adopt the Government's arguments.[5] Additionally, citing to 42 U.S.C. § 9659(d)(2), the Waste Haulers state that CERCLA does not provide a private right of action when the President has commenced and is diligently prosecuting an action under CERCLA.[6] The Waste Haulers state that such an action was filed in June of 1988, prior to the filing of the plaintiffs' Second Amended Complaint in which, according to the Waste Haulers, the claim for CERCLA response costs was first raised.[7] Consequently, the Waste Haulers argue that, even though some of the plaintiffs' expenditures, if proven, qualify as CERCLA response costs, the plaintiffs' entire CERCLA claim must be dismissed pursuant to § 9659(d)(2).[8]

In response, the plaintiffs contend that § 9659(d)(2) is not applicable to their § 9607 CERCLA response cost claim. Additionally, in the event the Court agrees that § 9659(d)(2) is applicable, the plaintiffs allege that they have established that their CERCLA response cost claims were in fact filed before the federal CERCLA action.

In their reply, the Waste Haulers concede that the plaintiffs' CERCLA response cost claims were filed prior to the filing of the Complaint in the federal CERCLA action. However, the Waste Haulers state that the federal action actually commenced on November 18, 1985, when the United States Environmental Protection Agency sent Waste Control of Florida, Inc., a "notice letter" stating that Waste Control of Florida, Inc., had been identified as a potentially responsible party in connection with the Hipps Road Landfill. Consequently, the Waste Haulers contend that since the federal action preceded the plaintiffs' claim, § 9659(d)(2) bars their claim for CERCLA response costs.

### A. ANALYSIS

Section 9659(a)(1), entitled "Citizen suits" states, in relevant part:

(a) Authority to bring civil actions.

Except as provided in subsections (d) and (e) of this section and in section 9613(h) of this title (relating to timing of judicial review), any person may commence a civil action on his own behalf—

(1) against any person ... who is alleged to be in violation of any standard, regulation, condition, requirement, or order which has become effective pursuant to this chapter.

42 U.S.C. § 9659(a)(1). Additionally, § 9659(c) specifies the types of relief which are available to an individual bringing such an action. That section states, in relevant part:

The district court shall have jurisdiction in actions brought under subsection

---

**5.** The expenditures which the plaintiffs seek to recover in Count Seven of their Second Amended Complaint are identical to those sought by the plaintiffs in Count Eight. Therefore, the Court will adopt its analysis in the previous section regarding which of the plaintiffs' expenditures constitute proper CERCLA response costs. Consequently, only the plaintiffs' expenditures for connecting to the water line provided by the City of Jacksonville and their expenditures for bottled water qualify as proper CERCLA response costs. The Court will dismiss all other expenditures which the plaintiffs seek to recover in Count Seven.

**6.** Section 9659(d)(2) states, in relevant part, that "[n]o action may be commenced under paragraph (1) of subsection (a) of this section if the President has commenced and is diligently prosecuting an action under this chapter ... to require compliance with the standard, regulation, condition, requirement, or order concerned." 42 U.S.C. § 9659(d)(2).

**7.** On June 20, 1988, the Government brought suit against Waste Control of Florida, Inc., pursuant to CERCLA for injunctive relief and to remedy the allegedly hazardous conditions at the Hipps Road Landfill, and for recovery of response costs. *United States v. Wastecontrol of Florida, Inc.,* No. 88–502–Civ–J–14, Complaint, filed on June 20, 1988. On January 26, 1989, the Court approved a Partial Consent Decree reached by the parties. *Id.,* Partial Final Judgment at 11, filed on January 26, 1989. Pursuant to the Partial Consent Decree, the parties are required to provide periodic reports to the Court as to their compliance. *Id.* at 8.

**8.** At oral argument, the Waste Haulers further clarified their position by stating "Had plaintiff filed an earlier CERCLA action against us, certainly they had appropriate response costs, but because they delayed asserting that action until after the Federal CERCLA claim had been filed, the statute bars them." Transcript of Hearing on Pending Motions at 65, filed on March 29, 1991.

(a)(1) of this section to enforce the standard, regulation, condition, requirement, or order concerned ... to order such action as may be necessary to correct the violation, and to impose any civil penalty provided for the violation.

42 U.S.C. § 9659(c). Thus, this section does not permit the recovery of response costs; only § 9607(a)(4) authorizes such relief.

The Court agrees with the conclusion of the *Regan* court that:

> [t]he legislative history of [§ 9659] demonstrates that, rather than create a duplicative private action for response costs, Congress intended to establish a citizen suit provision through which the public could prod the executive branch into zealously enforcing hazardous waste laws. In addition, Congress intended that [§ 9659] establish private attorneys general to supplement administrative action and aid in attacking CERCLA violators.

> Congress amended CERCLA in 1986 through passage of SARA at a time when at least some of its members felt that CERCLA had been less than effective due to "misguided [EPA] policies." H.R.Rep. No. 253(I), 99th Cong., 2nd Sess. 257 *reprinted in* 1986 U.S.Code Cong. & Admin.News 2835, 2931 (Separate and Dissenting Views). Therefore, Congress enacted the Citizens Suit provision of SARA, which became [§ 9659] of CERCLA, to serve "as both a goad and an alternative to the [EPA's] own inadequate enforcement efforts." *Id.* at 290, *reprinted in* 1986 U.S.Code Cong. & Admin.News 2965.

*Regan v. Cherry Corp.,* 706 F.Supp. 145, 149 (D.R.I.1989).

■ In light of the separate issues which each provision addresses, the Court finds that § 9659(d)(2) does not operate as a bar to the plaintiffs' claims for CERCLA response costs pursuant to § 9607. It is clear that the prohibition in § 9659(d)(2) against the initiation of private citizen suits when the President has already undertaken such an action is intended to prevent dupli-

cative actions regarding regulatory compliance.[9] Therefore, the Court will deny in part and grant in part the Defendant Waste Haulers' Motion to Dismiss or for Judgment on the Pleadings or, in the Alternative, for Partial Summary Judgment as to Count VII, filed on February 4, 1991.

### III. CONCLUSION

The Court finds that § 9659(d)(2) does not operate as a bar to the plaintiffs' claims for CERCLA response costs. Additionally, the Court finds that only the plaintiffs' expenditures for connecting to the water line provided by the City of Jacksonville and their expenditures for bottled water constitute CERCLA response costs. Consequently, the Court will dismiss all other expenditures which the plaintiffs seek to recover as CERCLA response costs in Counts Seven and Eight. Therefore, the Court will grant in part and deny in part the United States' Motion to Dismiss the Eighth Cause of Action or, in the Alternative, to Strike Plaintiffs' Claim and for Partial Summary Judgment, filed on February 4, 1991; and the Court will deny in part and grant in part the Defendant Waste Haulers' Motion to Dismiss or for Judgment on the Pleadings or, in the Alternative, for Partial Summary Judgment as to Count VII, filed on February 4, 1991.

Accordingly, it is

ORDERED:

1. That the United States' Motion to Dismiss the Eighth Cause of Action or, in the Alternative, to Strike Plaintiffs' Claim and for Partial Summary Judgment, filed on February 4, 1991, is granted in part and denied in part.

2. That the plaintiffs' claim in Count Eight of their Second Amended Complaint for response costs other than their expenditures for connecting to the water line provided by the City of Jacksonville and their expenditures for bottled water is dismissed.

3. That the Defendant Waste Haulers' Motion to Dismiss or for Judgment on the Pleadings or, in the Alternative, for Partial

---

9. In light of this holding, the Court need not reach the issue of what constitutes the com-

mencement of a CERCLA action for the purposes of 42 U.S.C. § 9659(d)(2).

Summary Judgment as to Count Seven, filed on February 4, 1991, is denied in part and granted in part.

4. That the plaintiffs' claim in Count Seven of their Second Amended Complaint for response costs other than their expenditures for connecting to the water line provided by the City of Jacksonville and their expenditures for bottled water is dismissed.

DONE AND ORDERED.