**Raymond ROMEO, et al., Plaintiffs,**

v.

**GENERAL CHEMICAL CORPORATION, a Delaware Corporation, Defendant.**

**Nos. C–93–2841 DLJ, C–93–2868 DLJ.**

United States District Court,
N.D. California.

Sept. 14, 1994.

William Bernstein, and William Kershaw, of the Law Firm Lieff, Cabraser & Heimann, San Francisco, CA, for plaintiffs.

Michael J. Baker, and Debra S. Belaga, with the Law Firm Jackson, Tufts, Cole & Black, San Francisco, CA, for defendant.

## ORDER

JENSEN, District Judge.

The Court heard defendant's motion to dismiss plaintiffs' claims for environmental response costs on February 9, 1994. Michael Baker and Debra Belaga of Jackson, Tufts, Cole & Black appeared for defendant General Chemical Corporation ("GCC"). William Bernstein and William Kershaw of Lieff, Cabraser & Heimann appeared for plaintiffs. The Court granted defendant's motion to dismiss in an abbreviated Order dated February 11, 1994, and returns to the matter now to more fully explain those reasons supporting the Court's holding.

## I. BACKGROUND

This case arises out of a July 26, 1993 accident in which a chemical cloud was released by GCC at its yard in Richmond, California. At about 7:00 a.m., as employees attempted to transfer one hundred tons of oleum from a railroad tank car to a storage tank, a rapid increase in pressure caused an explosion resulting in the release of thousands of pounds of oleum. Upon contact with the atmosphere, oleum turns into sulfuric acid and sulfur trioxide. In this case, the immediate result was a cloud measuring several miles wide by approximately fifteen miles long.

Approximately 11:00 a.m., some four hours after the accident, the leak was sealed. The cloud travelled in a primarily northeasterly direction—through at least eleven communities—causing some 20,000 area residents to seek medical treatment. Some of these residents, including the named plaintiffs, were evacuated from the area.

As explained by plaintiffs, airborne byproducts of oleum can spread to surrounding areas, and subsequently be "reactivated" each time the residue comes in contact with rainfall or water. Physical exposure to oleum, sulfuric acid or sulfur trioxide, plaintiffs contend, can create long-term health concerns.

Shortly after the accident, four of those plaintiffs named in the federal action filed class action complaints in state court. *See* Defendant's Mot. at 3. The number of cases in state court now exceeds forty, and the individual claimants in these actions approximate 51,000. The state litigation has been coordinated in Contra Costa County before Judge Douglas Swager.

Plaintiffs filed this federal action on July 30, 1993, initially asserting claims exclusively under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9601, *et seq.* On September 29, 1993, plaintiffs amended the complaint to include supplemental state claims for negligence, negligence per se, public nuisance, private nuisance, trespass and strict liability for ultra-hazardous activity. On December 23, 1993, plaintiffs filed a second amended complaint.

Defendant thereafter moved for dismissal of the CERCLA claim, and for the Court to decline to exercise supplemental jurisdiction over the pendent state claims. As discussed, the Court issued a ruling February 9, 1994, the reasons for which are now elaborated below.

## II. DISCUSSION

### A. *Legal Standard for Rule 12(b)(6)*

Motions to dismiss are governed by Federal Rule of Civil Procedure 12(b)(6), which provides that a defendant may seek to dismiss a complaint for "failure to state a claim upon which relief can be granted." This rule requires a determination whether the facts alleged would entitle the plaintiff to a legal remedy. The leading case of *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), articulates the standard as follows:

> In appraising the sufficiency of the complaint we follow, of course, the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.

*Id.* at 45–46, 78 S.Ct. at 101–02. If the complaint fails to articulate a legally sufficient claim, however, the complaint should be dismissed.

■ Generally, a court may only consider allegations made in the complaint, and extrinsic factual material may not be taken into account. *Powe v. City of Chicago*, 664 F.2d 639, 642 (7th Cir.1981). However, materials properly attached to a complaint as exhibits may be considered for purposes of Rule 12(b)(6). *Hal Roach Studios v. Richard Feiner & Co.*, 883 F.2d 1429, 1441 n. 18 (9th Cir.1989); *Amfac Mortgage Corp. v. Arizona Mall of Tempe, Inc.*, 583 F.2d 426, 429 & n. 2 (9th Cir.1978); *see* Fed.R.Civ.P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."). If the allegations in the complaint are contradicted by the attached documents, a court may dismiss the claims under Rule 12(b)(6). *See Durning v. First Boston Corp.*, 815 F.2d 1265 (9th Cir.1987) ("[Attached] documents are part of the complaint and may be considered in determining whether the plaintiff can prove any set of facts in support of the claim.").

### B. *The CERCLA Claims*

■ Within CERCLA's detailed statutory scheme for the clean up of toxic waste sites, Congress has authorized a private cause of action for the recovery of "response costs." 42 U.S.C. § 9607. A private plaintiff must plead various elements in order to state a prima facie case for response costs under CERCLA: (1) the defendant is within a class of persons subject to liability in a private cost recovery action; (2) there has been a "release" or "threatened release" of a "hazardous substance" from a "facility," as defined in CERCLA; (3) such release caused plaintiff to incur "response costs"; (4) the costs incurred were necessary; and (5) the actions taken and response costs incurred were consistent with the "national contingency plan." *See* 42 U.S.C. § 9607(a); *3550 Stevens Creek Assoc. v. Barclays Bank*, 915 F.2d 1355, 1358 (9th Cir.1990), *cert. denied*, 500 U.S. 917, 111 S.Ct. 2014, 114 L.Ed.2d 101 (1991).

■ A CERCLA claim may not be maintained absent allegations of "at least one type of response cost cognizable under CERCLA in order to make out a prima facie case." *Ascon Properties, Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1153–54 (9th Cir.1989) (finding plaintiff had adequately alleged cognizable response costs); *see also McGregor v. Industrial Excess Landfill, Inc.*, 856 F.2d 39 (6th Cir.1988)(affirming 12(b)(6) dismissal of CERCLA claim where plaintiffs failed to sufficiently allege cognizable response costs). Applicable case law has defined with more precision than the express language of the CERCLA statute those costs which are in fact recoverable. Plaintiffs to the present action allege three types of response costs: (1) evacuation costs, including the costs of temporary housing; (2) medical monitoring costs; and (3) environmental monitoring costs, including the costs of purging hazardous substances from their property.

#### 1. *Evacuation Costs*

Plaintiffs contend they have adequately pleaded as response costs those expenses

incurred when plaintiffs were forced to evacuate the area, close their businesses and seek temporary housing on the date of the accident. These contentions are misplaced.

■ Evacuation costs are compensable only where consistent with "the national contingency plan", 42 U.S.C. § 9607(a)(4), *i.e.* when an evacuation is conducted by the Federal Emergency Management Agency ("FEMA") or other governmental officials. *See* 40 C.F.R. § 300.145(e). Here, by contrast, no evacuation was conducted; rather, public health officials ordered a "shelter in place" requiring residents in affected areas to stay inside their homes. *See* Complaint at ¶ 28; Reply at 3.

Contrary to plaintiffs' assertion, this limitation is not abrogated by the language of the CERCLA. Plaintiffs contend CERCLA itself supports a definition of response costs encompassing those expenses stemming from evacuations not authorized by government officials. *See* Opp'n at 9 (citing 42 U.S.C. § 9601(23) (cleanup removal includes "temporary evacuation and housing of threatened individuals not otherwise provided for . . .")). The statute goes on, however, to expressly limit recoverable damages to those consistent with the national contingency plan. *See* 42 U.S.C. § 9607(a)(4). Significantly, nothing in the referenced plan defines "evacuation" so expansively; the Code of Federal Regulations instead delimits those evacuations mandated by "FEMA or other governmental officials." 40 C.F.R. § 300.145(e).

Neither is such a limited interpretation of "evacuation" contradicted by those cases cited by plaintiffs. *See, e.g., Wehner v. Syntex Corp.,* 681 F.Supp. 651, 652–53 (N.D.Cal. 1987); *D'Amico v. Consolidated Rail Corp.,* 1991 WL 340562 (W.D.Pa.1991) (two page order silent on question whether government ordered evacuation).

■ For these reasons, the "evacuation costs" pleaded by plaintiffs are not properly within the scope of "response costs" recuperable under CERCLA.

### 2. *Medical Monitoring Costs*

Plaintiffs also claim they have properly pleaded a claim under CERCLA for "medical monitoring costs." A split of authority has divided courts as to the viability of a CERCLA claim premised on such costs. The only circuit court of appeals to address the issue found personal medical costs outside the scope of CERCLA, *see Daigle v. Shell Oil Co.,* 972 F.2d 1527, 1537 (10th Cir.1992), as have various district courts considering the question. *See Lutz v. Chromatex Inc.,* 718 F.Supp. 413, 417–18 (M.D.Pa.1989); *Coburn v. Sun Chem. Corp.,* 28 ERC (BNA) 1665, 1988 WL 120739 (E.D.Pa.1988). Those cases decided within the Ninth Circuit are in accord. *See Wehner,* 681 F.Supp. at 652–53; *Yslava v. Hughes Aircraft Co.,* 845 F.Supp. 705, 708 (D.Ariz.1993) ("medical monitoring costs do not constitute response costs under CERCLA"); *Price v. United States Navy,* 818 F.Supp. 1322 (S.D.Cal.1993) (medical monitoring costs not recoverable under CERCLA).

■ The analysis of the Tenth Circuit Court of Appeals in *Daigle* is convincingly supported by the definition given response costs in §§ 9601(23), 9601(24), and also by the legislative history of, and amendments to, the enactment. *See* 972 F.2d at 1535–37. Section 9601(23) relates only to the "evaluation" of a contamination, and section 9601(24) focuses only on controlling the migration of a contamination. *See Daigle,* 972 F.2d at 1535. The court in *Daigle* noted that the additional phrase in § 9601(23): "other actions as may be necessary to prevent, minimize or mitigate damage to the public health or welfare" should not be read "broadly" to include personal medical monitoring costs, *id.,* since those "other actions" are then specifically listed in the next sentence of the statute. Notably, that next sentence makes no mention of personal medical monitoring, but restricts response costs to those expenses incurred to prevent contaminants from spreading. *Id.* It is the conclusion of this Court that, as found in *Daigle,* personal medical monitoring costs cannot be justified as preventing the spread of contaminants; those "other actions" listed in section 9601(23), therefore, cannot be read to encompass personal medical monitoring.

Apart from the explicit statutory language, CERCLA's legislative history buttresses the

Court's conclusion that expenses associated with personal medical monitoring are not properly defined as response costs. As outlined in *Daigle*, "both houses of Congress considered and rejected any provision for recovery of ... medical expenses." *Id.* The Senate rejected a bill which included private recovery for "all out-of-pocket medical expenses," and Congress rejected a bill that provided private recovery for "all damages for personal injury." *Id.* at 1536 (*quoting* S.1480 and H.R.7020, 96th Cong., 2d Sess., (1980), *reprinted in Superfund: A Legislative History, Vol. III*, Environmental Law Institute (1982), Vol. I, 289, Vol. III, 183).

Legislative action following enactment of CERCLA similarly supports an exclusion of medical monitoring expenses from a definition of response costs. Congress created the Agency for Toxic Substances and Disease Registry ("ATSDR") which, pursuant to a 1986 amendment, assesses and monitors the public health risk from a contaminant, and refers exposed people for treatment. *See Daigle*, 972 F.2d at 1536–37; 42 U.S.C. § 9604(i). Because CERCLA has provided an administrative avenue for monitoring the public health, the Court finds no reason absent any explicit statutory language to the contrary why monitoring public health should also be funded through private cost recovery actions.

Given this background to CERCLA response costs, plaintiffs' view that Congress intended the statute to be read broadly to include compensation for personal medical monitoring costs cannot be supported.

In those instances where claims for medical monitoring costs have been recognized, courts have confined the permissible medical response costs to those expended only for the purpose of tracking the spread of a particular contaminant. *See Werlein v. U.S.*, 746 F.Supp. 887, 902–03 (D.Minn.1990) (surveying the cases that found medical monitoring costs to be viable CERCLA response costs). For example, one court allowed medical monitoring costs expended "to assess the effect of the release or discharge on public health or to identify potential public health problems." *Brewer v. Ravan*, 680 F.Supp. 1176 (M.D.Tenn.1988). As noted in *Werlein*,

*Brewer* is the only court to have offered substantive reasons for allowing medical monitoring costs under CERCLA; other cases generally provide little discussion of the issue. *Id.* at 902–03; *see Williams v. Allied Automotive Div.*, 704 F.Supp. 782, 784 (N.D.Ohio 1988); *Jones v. Inmont Corp.*, 584 F.Supp. 1425 (S.D.Ohio 1984) (conclusorily stating that response and remedy definitions are broadly drawn); *Lykins v. Westinghouse Elec.*, 27 Env't.Rep.Cas. (BNA) 1590, 1988 WL 114522 (E.D.Ky.1988) (medical monitoring costs recoverable if part of a "clean-up"); *Hopkins v. Elano Corp.*, 30 Env't.Rep.Cas. (BNA) 1782 (S.D.Ohio 1989) (dicta stating contaminants still dangerous when in a person's body). The more recent cases, similarly, have not meaningfully articulated a rationale for permitting medical monitoring costs. *See In re Hanford Nuclear Reservation Litig.*, 780 F.Supp. 1551 (E.D.Wa.1991)(dicta speculating that medical monitoring might be viable, but dismissing claim for lack of jurisdiction); *Cook v. Rockwell Int'l Corp.*, 755 F.Supp. 1468, 1471–76 (D.Colo.1991) (medical monitoring to assess the environmental effects of a release are cognizable under CERCLA).

In sum, *Daigle* and its progeny have thoroughly explored and compellingly explained why even those limited medical monitoring costs permitted in some court decisions are not recoverable as response costs under CERCLA. Whether expended for personal or public health, medical monitoring costs cannot be properly recoverable in a private CERCLA action. As an aside, it is worth noting that dismissal of claims pleading such costs does not prejudice plaintiffs, given the availability of analogous state remedies. *See Potter v. Firestone Tire & Rubber Co.*, 6 Cal.4th 965, 1006–07, 25 Cal.Rptr.2d 550, 863 P.2d 795 (1993) (allowing plaintiffs compensation for medical monitoring costs arising out of exposure to defendant's toxic waste).

### 3. *Environmental Monitoring Costs*

■ Plaintiff's claim for environmental monitoring costs is similarly misplaced. While governing case law provides for the recovery of certain types of environmental response costs, *see Cadillac Fairview/Cali-*

*fornia v. Dow Chemical Co.*, 840 F.2d 691, 693 (9th Cir.1988), the pleading in the present matter largely masks a claim for the type of medical monitoring costs already found above to be not cognizable under CERCLA. Specifically, the "environmental monitoring" costs pleaded in the present matter entail the future medical testing of plaintiffs, thus approximating closely the claim for medical monitoring costs. While plaintiffs here seek recovery for medical testing associated with tracking the contaminant, as opposed to health purposes, that distinction is not analytically meaningful since, as stated above, medical monitoring costs are not permitted whether expended for personal or public health.

As to any aspect of plaintiffs' environmental monitoring claims including costs for expenses other than medical testing, those portions of the claims would also be not be cognizable under applicable law. Those cases that have recognized environmental monitoring claims under CERCLA have involved a planned expenditure to monitor a continuing contamination. *See Cadillac Fairview/California*, 840 F.2d at 693 ($70,000 in actually incurred costs, expended in part for chemical testing of hazardous substances dumped on the site). In the present case, the contamination resulted from a chemical cloud which dissipated within a few hours. Further, it has not been adequately pleaded that any such environmental monitoring costs were actually expended which would target any future monitoring of a continuing contamination.

C. *Plaintiffs' Pendent State Law Claims*

In its February 11, 1994 Order, the Court wrote,

> Should plaintiffs fail to plead a viable CERCLA claim upon amendment, it is the intention of the Court to decline to exercise supplemental jurisdiction over the remaining state law claims, pursuant to 28 U.S.C. § 1367(c)(3). Furthermore, should plaintiffs state a viable CERCLA claim, the Court will consider dismissal of the supplemental state law claims pursuant to other subsections of 28 U.S.C. § 1367(c).

Order, Feb. 11, 1994, at 1–2. Following issuance of that Order, plaintiffs submitted an amended complaint which included no state law causes of action, thus rendering unnecessary a decision whether to exercise supplemental jurisdiction. The amended complaint did include a CERCLA claim for property damage, the viability of which shall not be considered by the Court at this time.

IT IS SO ORDERED.